COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                               NO.
02-09-00258-CR

 

 

TYRELL A. JACKSON                                                                        APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

              FROM
THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                    MEMORANDUM OPINION[1] ON APPELLANT=S

                    PETITION
FOR DISCRETIONARY REVIEW

 

                                                       ------------

I. 
Introduction

Pursuant
to Texas Rule of Appellate Procedure 50, we have reconsidered our prior opinion
on receiving Appellant Tyrell A. Jackson=s
petition for discretionary review.  See
Tex. R. App. P. 50.  We withdraw our
opinion and judgment of August 31, 2010, and substitute the following in its
place.

In
two points, Jackson appeals his sentence for aggravated assault with a deadly
weapon.  We affirm.

II.  Factual and Procedural Background

On
June 22, 2007, Jackson pleaded guilty to aggravated assault with a deadly
weapon in exchange for ten years=
deferred adjudication community supervision and a $500 fine.  Part of his community supervision terms and
conditions included that he pay a supervision fee of $60 per month, a $20 crime
stoppers fee, the $500 fine, attorney=s
fees in the amount of $1,700, and court costs in the amount of $276.

At
the July 17, 2009 hearing on the State=s
first amended petition to proceed to adjudication, Jackson pleaded true to the
allegations contained within paragraphs 2, 4A, 4B, 5A, 5B,
6, 8A, and 8B.[2]  Jackson=s
community supervision officer testified that Jackson failed to attend fee
docket but also that Jackson went to court on April 7, 2009, was told that he
needed to make a payment, and paid some money that day.  Jackson testified that on April 7, 2009, he
left court and made a $150 payment.  When
he returned to court, no one called his name so he Atook
it upon [him]self to leave@
because he did not know what he was supposed to do.  He attributed missing the three days of his
Intensive Day Treatment Aftercare and missing his urine test to car trouble,
his failure to report in January and May 2008 to homelessness, and his failure
to make his supervision and crime stoppers fee payments to unemployment.

The
trial court found the allegations in paragraphs 2, 4A,
4B, 5A, 5B,
6, 7,[3]
8A, and 8B to be true and
adjudicated Jackson guilty of aggravated assault with a deadly weapon.  It found the deadly weapon allegation to be
true and assessed punishment at fourteen years=
confinement.  The trial court added a
special finding on reparations, in the amount of $3,291.50,[4]
to the written judgment entered on July 24, 2009.  This appeal followed.

III.  Punishment

In
his first point, Jackson complains that his fourteen-year sentence Afor
marginal technical violations of probation was an abuse of the trial court=s
discretion, disproportional[,] and in violation of the
8[th] Amendment . . . prohibition of cruel and
unusual punishment.@

To
preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R.
App. P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526
U.S. 1070 (1999).  Further, the trial
court must have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court=s
refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d
334, 341 (Tex. Crim. App. 2004).  When an
appellant fails to object that his sentence is disproportionate either at the
time it is imposed or in a motion for new trial, nothing is preserved for our
review.  Kim v. State, 283 S.W.3d 473, 475 (Tex. App.CFort
Worth 2009, pet. ref=d); see also Mercado v.
State, 718 S.W.2d 291, 296 (Tex. Crim. App. 1986)
(stating that, as a general rule, appellant may not assert error pertaining to
his sentence or punishment when he failed to object or otherwise raise such
error in the trial court); Noland v. State, 264 S.W.3d
144, 152 (Tex. App.CHouston [1st Dist.] 2007,
pet. ref=d)
(holding that when appellant failed to object to his sentence at the punishment
hearing or to complain about it in his motion for new trial, he failed to
preserve his Eighth Amendment complaint that the punishment assessed was Agrossly
disproportionate and oppressive@); Wynn
v. State, 219 S.W.3d 54, 61 (Tex. App.CHouston
[1st Dist.] 2006, no pet.) (holding that defendant=s
failure to object to his sentence of life imprisonment as cruel and unusual
punishment waived error).

Jackson=s
complaint about the alleged disproportionality of his
sentence was not raised at the time it was imposed or in his motion for new
trial.[5]
Therefore, he has preserved nothing for our review.  See Kim, 283 S.W.3d
at 475; Noland, 264 S.W.3d at 151B52.  We overrule Jackson=s
first point.[6]

IV.  Reparations

In
his second point, Jackson makes the following arguments:  The order to pay $3,291.50 is invalid and
should not be included in the judgment because Jackson was indigent and the
applicable governing statute is article 26.05(g) of the code of criminal
procedure.  He appears to argue both that
the entire amount is invalid and that the attorney=s
fees portion, individually, is invalid. 
Further, he states,

The
only information in the record that appears to relate to [the reparations]
entry is a document addressed to the presiding Judge from the Community
Supervision and Corrections Department identified as a Arevocation
restitution/reparation balance sheet@ citing Article 42.03 Sec. 2b Code of Criminal Procedure.  This document appears to tally figures
including probation fees, court costs and attorney[=]s fees.  It is date[d] July 23, 2009[,] a full six
days after the judgment adjudicating Appellant=s guilt was orally
announce[d] in open court.  The logical
conclusion is that this information was received and added to the written
judgment signed on July 24, 2009[,] well after the conclusion of any court
proceedings.[[7]]

 

 








He also argues that article
42.03, section 2(b) says nothing about attorney=s fees
or amounts other than Arestitution or reparation,@
there was never any restitution ordered either when Jackson
was placed on community supervision or afterward, and that reparation
and restitution both refer to the same thing: 
an amount to be paid to the victim of a crime.[8]  Finally, he compares his case to Mayer v.
State, 309 S.W.3d 552 (Tex. Crim. App. 2010).

Section
2(b) of article 42.03 of the code of criminal procedure states that A[i]n all revocations of a suspension of the imposition of a
sentence the judge shall enter the restitution or reparation due and owing on
the date of the revocation.@  Tex. Code Crim. Proc. Ann.
art. 42.03, ' 2(b)
(Vernon Supp. 2010).  Section
11(a)(11) of article 42.12 states that conditions of community supervision may
include, as here, conditions that the defendant shall Areimburse
the county in which the prosecution was instituted for compensation paid to
appointed counsel for defending the defendant in the case, if counsel was
appointed[.]@  See Tex. Code Crim.
Proc. Ann. art. 42.12, ' 11(a)(11) (Vernon Supp. 2010); see also id. ' 5(a)
(Vernon Supp. 2010) (stating that for deferred adjudication community
supervision, A[t]he
judge may . . . require any reasonable conditions of community supervision . .
. that a judge could impose on a defendant placed on community supervision for
a conviction that was probated and suspended, including confinement@).  Other basic conditions of community
supervision may include, as here, paying a fine, court costs, and a crime
stoppers fee.  See id. ' 11(a)(8), (21).  In
assessing payments as a term or condition of community supervision, the trial
court Ashall
consider the ability of the defendant to make payments.@  Id. ' 11(b).  There is no indication in the record that the
trial court failed to consider his ability to pay when it imposed these
conditions in June 2007.[9]  See id. ' 11(b).

The unadjudicated judgment on plea of guilty and suspending
imposition of sentence, signed on June 22, 2007, reflects that Jackson pleaded
guilty and received ten years=
deferred adjudication community supervision, as well as a $500 fine (not
suspended), attorney=s fees in the amount of
$1,700, and court costs in the amount of $276, Apayable
to and through the District Clerk of Tarrant County, Texas.@  Jackson=s
conditions of community supervision, filed on the same day the deferred
adjudication order was signed, reflect in condition 12 that Jackson was to:

Pay
the following to and through the Community Supervision and Corrections
Department of Tarrant County, Texas. The first payment on the
above to be made on the 15th of July, 2007, and like payments on the 15th day
of each month thereafter until full payments are made. (unless otherwise specified)

 

a.       RESTITUTION  in the amount of $_____, at the rate
of $_____ per month.

 

b.       SUPERVISION FEE in the amount of
$60.00, each month during the period of supervision.

 

c.       CRIME STOPPERS FEE in the
amount of $20.00 to be paid within 30 days from the date shown above.

 

Pay
the following to and through the District Clerk of Tarrant County, Texas.  Payment schedule to be determined by the
District Clerk of Tarrant County, Texas.

 

d.      FINE  in the amount of $500.00.  ATTORNEY FEE in the amount of $1,700.  COURT COSTS in the amount of $276.  _______ in the
amount of $____.

 

Because Jackson waived
having a court reporter at his plea bargain hearing, there is nothing in the
record to show that Jackson objected to any of these conditions in the trial
court.  And the record does not indicate
that he ever filed a petition for writ of habeas corpus to challenge any of
these conditions.  See
Tex. Code Crim. Proc. Ann. art. 11.072 (Vernon 2005).








Contrary
to Jackson=s
argument in his original brief and in his petition for discretionary review, we
believe article 42.03, section 2(b) controls here, rather than Mayer and
article 26.05(g).[10]

In Mayer,
on direct appeal after being found guilty and having punishment assessed, the
Amarillo Court of Appeals sustained Mayer=s Arepayment
of appointed attorney=s fees@
issue.  309 S.W.3d at 553. 
The trial court had included court‑appointed
attorney=s
fees in its oral pronouncement of sentence and the amount, $2,850, in the
written judgment.  Id.  The Amarillo court relied on article
26.05(g), the fact that the record did not include any determination or finding
by the trial court that Mayer had any financial resources or was able to pay
the fees, and Mayer=s indigence and
qualification for appointed counsel to support its decision.  Id.

The
court of criminal appeals stated that, based on article 26.05(g), Athe
defendant=s
financial resources and ability to pay are explicit critical elements in the
trial court=s
determination of the propriety of ordering reimbursement of costs and fees.@  Mayer, 309 S.W.3d at 556. 
And the court further relied on article 26.04(p), which states that a
defendant who has been determined by the court to be indigent is presumed to
remain indigent for the remainder of the proceedings in the case unless a
material change in the defendant=s
financial circumstances occurs, to sustain the Amarillo court=s
judgment in the face of the State=s
argument that remand for a redetermination of financial status was more
appropriate than rendition.  Id. at 557.

In
the court of criminal appeals, the State argued that Mayer failed to preserve
the issue because he did not object in the trial court or in a motion for new
trial, comparing Mayer=s failure to object to Aa
situation in which an appellant first challenges on appeal probation conditions
that may be unreasonable, unconstitutional, or violative
of statutory provisions.@  Id. at 554 (referencing Speth v. State, 6 S.W.3d
530, 534 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1088 (2000)).[11]  However, Mayer couched his issue as an
evidentiary sufficiency challenge that did not require preservation for direct
appeal.  Id. at
554B55.  The court did not address Speth
or article 42.03, section 2(b), but it did not need to, as Mayer=s
case involved a direct appeal from a jury trial and not a revocation of
deferred adjudication community supervision.

The
Amarillo court has recently addressed the inclusion of attorney=s
fees in a judgment of conviction after the revocation of a
deferred adjudication community supervision.  Reyes v. State, No. 07-10-00124-CR,
2010 WL 4008534, at *1B2 (Tex. App.CAmarillo Oct. 13, 2010, no
pet. h.).  Reyes was placed on deferred
adjudication after he pleaded guilty to aggravated assault with a deadly weapon
and, as a condition of his community supervision, he was ordered to pay
attorney=s
fees of $750.  Id.
at *1.  After the State moved to
revoke his community supervision, the trial court granted the motion, sentenced
Reyes to ten years in prison, and ordered him to pay attorney=s
fees of $1,050, and other amounts not pertinent to our discussion here.  Id. 
Reyes appealed, complaining that the trial court erred by ordering him
to pay $1,050 in attorney=s fees because the record Acontained
insufficient evidence to show that he >had
any financial resources= from which to pay them.@  Id. 
The Amarillo court agreed only in part, stating,

This
court previously held, in Mayer v. State, 274 S.W.3d
898 (Tex. App.CAmarillo 2008), aff=d, 309 S.W.3d 552
(Tex. Crim. App. 2010), that a trial court generally erred by ordering a
defendant to pay a fee for a court‑appointed
attorney when the record contained no evidence illustrating that he had
sufficient financial resources to pay it. 
Id. at 901B02.  Yet, we were not dealing with fees arising
from a plea bargain and levied as a condition of probation there.  In the latter circumstance, the result may
not be the same.  This is so because an
award of community supervision (or probation) is not a right, but a contractual
privilege.  Speth v. State, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999).  Additionally, the conditions appended to the
grant of community supervision are terms of the contract entered into between
the trial court and the defendant.  Id.  More importantly, those to which no one
objects are considered to be affirmatively accepted as part of the contract,
which means, in turn, that the accused normally waives any complaint with
regard to them.  Id.  In other words, one benefitting from the
contractual privilege of probation must complain at trial about any conditions
he deems objectionable, and unless he does that, belated objections are waived.  Id.

 

Given Speth,
we agree with the State that appellant should have complained to the trial
court about the condition of his probation obligating him to pay $750 in
attorney=s fees at the time
the condition was imposed.  Because he
did not, he not only affirmatively accepted it but also waived any objection to
it.  The same is not true of the
additional $300 assessed once appellant was adjudicated guilty; the imposition
of that sum is controlled by the holding in Mayer.  And, because the record does not reflect that
appellant had the financial means to pay it, the trial court erred by imposing
it.  Accordingly, we modify the trial
court=s judgment by
reducing the amount of attorney=s fees payable by
appellant from $1,050 to $750.

 

Id. at
*1B2.

Here,
the record reflects that the amount of reparation included in the second
judgment is the same as the amount included in the deferred adjudication
community supervision terms and conditions, to which Jackson made no objection
in 2007.  See id.  As in Reyes, because Jackson did not
object, he not only affirmatively accepted the amount but also waived any
objection to it now.  See id.  Additionally, because article 42.03, section
2(b) states that the trial court in a revocation Ashall
enter the restitution or reparation due and owing on the date of the
revocation,@
upon revoking Jackson=s community supervision, the
trial court had no choice but to enter the amount of reparation due and owing
when it signed the written judgment.  See Tex. Code Crim. Proc. Ann. art. 42.03, '
2(b) (emphasis added); see also Armstrong v. State, 320 S.W.3d 479, 481 (Tex. App.CAmarillo
2010, pet. granted) (stating that costs in clerk=s
bill of costs did not have be incorporated by reference into the judgment to be
valid, citing Weir v. State, 278 S.W.3d 364,
366B67
(Tex. Crim. App. 2009)); Brown, 2009 WL 1905231, at *2 (holding that
because reparations are not punishment and part of the sentence, they do not
have to be included in the trial court=s
oral pronouncement of sentence to be properly included in the written
judgment).  We overrule Jackson=s
second point.

V. 
Conclusion

Having
overruled both of Jackson=s points, we affirm the
trial court=s
judgment.

 

PER
CURIAM

PANEL:  MCCOY, GARDNER, and WALKER, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED: December 23, 2010











[1]See Tex. R. App. P.
47.4.





[2]That is, that
Jackson:

 

2.  Failed to attend Fee Docket by leaving the
District 371st Courtroom prior to being released by the Court on or about April
7, 2009.

 

4A.  Failed to attend Intensive Day Treatment
Aftercare, on or about November 24, 2008; December 11, 2008; and December 17,
2008.

 

4B.  Was unsuccessfully discharged from Intensive Day
Treatment Aftercare on or about December 18, 2008, because he violated
condition 4A.

 

5A.  Failed to submit a urine sample for testing
on or about November 10, 2008.

 

5B.  Submitted a diluted urine
sample on or about December 29, 2008.

 

6.  Failed to report as scheduled by his
community supervision officer during January and May 2008.

 

8A.  Failed to pay his $60/month supervision fee
in July, September, and December 2007; in all but two months (May, December) in
2008; and January, March, and May 2009.

 

8B. 
Failed
to pay his $20 crime stoppers fee within thirty days from the date of community
supervision.





[3]Paragraph 7 alleged
that on or about April 8, 2009, Jackson failed to remain in Tarrant County and
moved to Irving, Texas, without authorization from the court or his community
supervision officer.  Jackson=s community
supervision officer testified that he told her that he had moved to Irving,
Texas.  Jackson said that he lied about
moving to Irving because he needed to give his community supervision officer an address and his mother would not let him use hers.





[4]A report from the
Tarrant County Community Supervision and Corrections Department in the trial
court=s file stated that,
as of July 23, 2009, Jackson=s probation fees,
fines, court costs, and attorney=s fees amounted to $3,291.50.





[5]Jackson filed a
motion for new trial, complaining that the verdict was contrary to the law and
evidence and alleging the discovery of new evidence favorable to him since
trial.  The motion does not appear to
have been presented to the trial court, it was not ruled upon, and it does not
raise his Eighth Amendment complaint.





[6]Further, punishment
imposed within statutory limits is generally not subject to challenge for
excessiveness.  See Kim, 283 S.W.3d at 475.  Jackson was warned that he faced the full
range of punishment for the original offenseCtwo to twenty years= confinement and up
to a $10,000 fineCif the trial court
revoked his deferred adjudication community supervision.  See Tex. Penal Code Ann. '' 12.33, 22.02(b)
(Vernon Supp. 2010).





[7]This appears to us to
be a complaint that the reparation finding was ordered too late.





[8]Jackson has provided
no briefing on this sub-argument.  See
Tex. R. App. P. 38.1(i).  Nonetheless, we note that while Arestitution@ has its own section
in the code of criminal procedure and is payable to any victim of the offense,  Areparation@ is not defined in
the code of criminal procedure, and this court has treated them as separate
terms.  See Tex.
Code Crim. Proc. Ann. art. 42.037(a) (Vernon Supp. 2010); Brown v.
State, No. 02‑08‑00063‑CR, 2009
WL 1905231, at *2 (Tex. App.CFort Worth July 2,
2009, no pet.) (mem. op.,
not designated for publication).





[9]Jackson waived the
attendance and record of a court reporter for his plea bargain in the written
plea admonishments, but the record reflects that Jackson had sufficient
financial resources to retain counsel in October 2006, before he filed three
different election of counsel forms between November
20 and December 18, 2006.

 

On
his November 20 election of counsel form, Jackson initialed the option stating,
AYes, I believe that I
am entitled to an appointed lawyer,@ and attached an affidavit of indigency that
reflected two dependents, his employer=s address and supervisor=s name, total gross
monthly income of $3,000 and total monthly expenses of $1,500, $600 per month
in rent, two 2002 automobiles worth $14,000 total, and $1,100 in his Achecking-savings@ account.  On his December 4 election of counsel form,
Jackson initialed the option stating, ANo, I am not entitled to an appointed lawyer.@

 

On his December 18 election of counsel form, Jackson
again initialed the option showing that he believed he was entitled to an
appointed lawyer.  In the attached
affidavit of indigency, he shows three dependents, his employer=s address and
supervisor=s name, $4,000 in
total gross monthly income and $2,200 in total monthly expenses, the two 2002
vehicles, and $1,500 in his checking account, and he totals the value of his
assets as $15,500.





[10]Article 26.05(g)
states, 

 

If the court
determines that a defendant has financial resources that enable him to offset
in part or in whole the costs of the legal services provided, including any
expenses and costs, the court shall order the defendant to pay during the
pendency of the charges or, if convicted, as court costs the amount that it
finds the defendant is able to pay.

 

Tex. Code Crim. Proc. Ann. art. 26.05(g)
(Vernon Supp. 2010).





[11]The court of criminal
appeals noted in Speth that section 11(b)=s provision
prohibiting the trial court from imposing payments without considering the
defendant=s ability to make the
payments could be affirmatively waived by a defendant entering into a probation
contract containing such terms without objection.  Speth, 6 S.W.3d at 534 n.8.