**Opinion issued March 21, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00060-CR

———————————

## ROBERT RONALD CAST, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 10CR3294**

## MEMORANDUM OPINION

A jury found appellant, Robert Ronald Cast, guilty of the offense of burglary

of a habitation with intent to commit aggravated sexual assault of a child[1] and

---

[1]    *See* TEX. PENAL CODE ANN. § 30.02 (Vernon 2011).

assessed his punishment at confinement for life. In two issues, appellant contends that he received ineffective assistance of counsel and his punishment is disproportionate to the crime in violation of the Eighth Amendment of the United States Constitution.

We affirm.

**Background**

The complainant, the father of a six-year-old girl and three-year-old boy, testified that he and this wife were watching television in their living room on the night of October 26, 2010 when they heard a loud noise from another part of their house. They ran to the room that their two children shared and found appellant in the room. The complainant explained that as he rushed to the bedroom door, appellant shut the door and held it closed. The complainant tried to force the door open, but was unable to because appellant blocked it from the other side, so he started talking to appellant until he opened the door. After the complainant checked on his sleeping children, he put himself between appellant and the children. Appellant then pointed to the six-year-old girl and said, "You can't possibly understand how badly I want that right now." Appellant told the complainant that he had "wanted" his daughter for two years and he could kill him and take the girl, but he could not bring himself to hurt another human being. In

the meantime, the complainant's wife had called for emergency assistance and ran to a neighbor's house for help. Appellant made no attempt to run away.

League City Police Department ("LCPD") Officer K. Williamson testified that when he arrived at the complainant's home, he found appellant bleeding and the complainant standing behind him. Williamson saw blood on the floor, the window in the children's bedroom broken, and glass on one of the beds. LCPD Officer S. Arena testified that he arrived on the scene as Williamson was running into the house. Arena explained that he handcuffed appellant, took him outside, and telephoned for paramedics after he realized that the cut on appellant's hand would require stitches.

LCPD Detective M. Grant testified that he was dispatched to the complainant's house after LCPD Detective R. Tisdale, who was at the home, realized that appellant "targeted" a child. Grant saw a large amount of blood on the bedroom floor, swabbed a sample of it, and obtained a saliva sample from appellant. Grant also saw a twelve-pack of beer and a receipt outside the broken window through which appellant had entered the children's bedroom. Grant later spoke with appellant who had been brought to a hospital, told him that he was "in custody," and asked if he wanted to talk about what had happened. Later at a police station, Grant advised appellant of his legal rights, and he and Tisdale interviewed appellant.

In his first video-recorded statement, appellant told Detectives Grant and Tisdale that he had been thinking about the girl in the complainant's house, he had seen her before, and thinking about her "turn[ed] him on." He stated that he had masturbated and ejaculated while he thought about the girl and he wanted to touch her. Appellant noted that he wanted to use his mouth and penis on her, put his penis into her vagina and his mouth on her vagina, and he would have done so if he had not been caught. Prior to the incident, appellant purchased the twelve-pack of beer, and, although it took him forty-five minutes, he walked to the complainant's home with the beer. He explained that he saw the girl lying in her bedroom and watched her for ten minutes. Although he knew that there were other people in the house, appellant swung the beer through the window and jumped inside. He would have gotten into bed with the girl, done whatever he could "with his mouth and hands," and had intercourse with her had her parents not been there. Appellant explained that although he would have used force against the girl if she had resisted him, he would not have taken the girl or killed her. He noted that if he had gotten away, he would have picked another girl, "moved on," and, next time, he would take a child to his apartment. Appellant explained that he had been attracted to children his "whole life," he would choose a girl over a woman, and the perfect age of the girl would be between seven and ten years old.

4

Detectives Grant and Tisdale later searched appellant's apartment and found printed photographs of young girls in suggestive poses and also found a belt that appellant later told them he had used to try to commit suicide earlier that evening. Grant noted that appellant had no marks on his neck and opined, based on his training on suicide and suicide attempts, that appellant had not attempted to commit suicide.

Several hours later, appellant gave to Detectives Grant and Tisdale a second video-recorded statement in which he told them that he had tried to commit suicide because he "knew he was about to go hurt a child." Appellant explained that although he had planned to sexually assault the girl, he "chickened out and couldn't do it" and "wanted" to be caught.

In trial, appellant testified that although he had seen the complainant's house before the incident because it was near his parents' house, he had not seen children there. And he had never seen or thought about the complainant's daughter. He explained that he is not attracted to children and would choose to have sex with a "full-grown" woman. Appellant noted that he had tried unsuccessfully to hang himself with a belt on the night of October 26 and later, while walking to his parents' house, he saw a police car. He then decided to go inside the complainant's house so that a police officer would shoot him. Appellant explained

5

that he only went into the house so that he could commit suicide by pretending to attack a police officer with a weapon and have the officer shoot him.

On cross-examination, appellant admitted that he recognized the photographs of young girls that Detectives Grant and Tisdale had found in his apartment, but stated that he was "not attracted" to young girls. After he identified a book found in his apartment that contained photographs of nude adults and children, appellant explained that he was "not attracted" to the children in the photographs. Appellant also admitted that when Officer Williamson had him "at gunpoint" inside the complainant's home, he did nothing to try to get Williamson to shoot him as a way to commit suicide.

Allison Heard, a Texas Department of Public Safety Crime Laboratory forensic scientist testified that the blood sample obtained from the bedroom of the complainant's home was consistent with appellant's DNA profile and the probability of selecting an unrelated person at random was one in 291.5 quintillion for Caucasians. Heard also testified that appellant was the source of the DNA profile with a "reasonable degree of certainty."

**Ineffective Assistance of Counsel**

In his first issue, appellant argues that he received ineffective assistance of counsel at trial because his trial counsel improperly "opened the door" by asking him if he was "attracted to children," allowing "cross examination by the State as

well as the introduction into evidence of pictures of young children that were found in [his] apartment." Appellant argues that this was not trial strategy because his counsel had filed a motion in limine and objected to the admission into evidence of the photographs and the book of photographs. He asserts that their exclusion would have created a reasonable probability that the outcome of the proceeding would have been different.

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). *Strickland* generally requires a two-step analysis in which an appellant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceedings would have been different. *Id*. at 687–94, 104 S. Ct. at 2064–68; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that his performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006); *Thompson*, 9 S.W.3d at 813. Appellant has the

7

burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

A failure to make a showing under either prong defeats an ineffective-assistance claim. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Moreover, allegations of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 814; *Bone v. State*, 77 S.W.3d 828, 835 & n.13 (Tex. Crim. App. 2002). When the record is silent, we may not speculate to find trial counsel ineffective. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court commonly will assume a strategic motivation if any can possibly be imagined and will not conclude that the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *See id*.

Appellant asserts that his trial counsel provided ineffective assistance when she asked him on direct examination whether he was "attracted to children." He responded that he was not and, given a choice, he would choose to have sex with a "full-grown" woman over a child. The State argued that by testifying that he was not attracted to children, appellant had "opened the door" to cross-examination concerning the photographs of the children and the book found in his apartment. The trial court admitted the photographs and the book and allowed the questioning.

8

On cross-examination, appellant identified the photographs and book that were found in his apartment, but repeated his earlier testimony that he was not attracted to children.

Here, appellant did not file a motion for new trial or otherwise assert to the trial court that his trial counsel was ineffective. The record does not otherwise indicate why appellant's trial counsel chose to ask him whether he was attracted to children. On this record, we cannot conclude that the alleged conduct was not sound trial strategy or was so outrageous that no competent attorney would have engaged in it.

We note that appellant's trial counsel asked him about being sworn to tell the truth before he gave his testimony in court, but not being sworn to tell the truth before he gave his statement to Detectives Grant and Tisdale. Appellant's counsel questioned him about whether he had told the truth when he told the detectives that he broke into the complainant's home because he "wanted" his daughter, wanted to have sexual intercourse with her, and had watched and "wanted her" for two years. Appellant's counsel also questioned him extensively about his suicide attempts, including his statements that he had attempted to commit suicide using the belt in his apartment and he was trying to commit suicide by breaking into the complainant's house, planning to have police officers shoot him. It appears that appellant's trial counsel attempted to cast doubt on the totality of his statements to

Detectives Grant and Tisdale and offer a different reason for the break in other than the intent to sexually assault a child. The decision to present witnesses is largely a matter of trial strategy. *Shanklin v. State*, 190 S.W.3d 154, 164 (Tex. App.—Houston [1st Dist.] 2005), *pet. dism'd, improvidently granted*, 211 S.W.3d 315, 316 (Tex. Crim. App. 2007). If trial counsel was engaging in such a strategy without success, we cannot conclude in hindsight that she was ineffective for attempting that strategy. *See Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979). We cannot presume that by presenting appellant as a witness and questioning him about whether he had told the truth in his statements to the detectives "was so outrageous that no competent attorney would have" done the same. *See Garcia*, 57 S.W.3d at 440.

In sum, appellant has not demonstrated that his trial counsel's performance fell below an objective standard of reasonableness. Accordingly, we hold that appellant has not satisfied *Strickland's* first prong. *See Tong v. State*, 25 S.W.3d 707, 713–14 (Tex. Crim. App. 2000).

We overrule appellant's first issue.

### Cruel and Unusual Punishment

In his second issue, appellant complains that "considering the totality of the circumstances," the punishment he received of confinement for life in prison is so disproportionate to the crime that it violates the Eighth Amendment's prohibition

of cruel and unusual punishment. He argues that his sentence is "grossly disproportionate to the crime" because the punishment range was confinement for five to ninety-nine years or life, he had no prior felony convictions, no convictions were admitted at trial, he was eligible for community supervision, and he had worked at a steady job at a grocery store for sixteen and a half years.

The Eighth Amendment of the United States Constitution requires that a criminal sentence be proportionate to the crime for which a defendant has been convicted. *Solem v. Helm*, 463 U.S. 277, 290, 103 S. Ct. 3001, 3009 (1983); *see also Baldridge v. State*, 77 S.W.3d 890, 893 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (stating that Eighth Amendment has narrow proportionality principle). However, in order to preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a); *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (noting that defendant waived any error because he presented his argument for first time on appeal); *Noland v. State*, 264 S.W.3d 144, 152 (Tex. App.—Houston [1st Dist] 2007, pet. ref'd) (holding that defendant's failure to argue that sentence was cruel and unusual punishment waived error).

Here, after the trial court announced its sentence at the punishment hearing, appellant made no objection to the trial court about the punishment assessed, nor did he assert his complaint in a motion for new trial. *See Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). Accordingly, we hold that appellant has failed to preserve any error for our review.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


                Terry Jennings
                Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).