Brent NOLAND, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–06–00829–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 20, 2007.

Discretionary Review Refused
Oct. 1, 2008.

J. Hans Barcus, Cantrell, Ray, Malts-
berger & Barcus, LLP, Huntsville, TX, for
appellant.

Andria Bender, Asst. Dist. Atty.,
Anderson, TX, for the State of Texas.

Panel consists of Justices NUCHIA,
JENNINGS, and KEYES.

## OPINION

TERRY JENNINGS, Justice.

A jury found appellant, Brent Noland,
guilty of the offense of murder[1] and as-
sessed his punishment at confinement for
fifty-five years and a $10,000 fine. In four
points of error, appellant contends that (1)
the evidence is factually insufficient to sup-
port the jury's finding that he was not
under the immediate influence of sudden
passion arising from an adequate cause at
the time of the offense, (2) his punishment
is excessive under the Eighth Amendment

---

**1.** *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Ver-    non 2003).

of the United States Constitution,[2] (3) the trial court erred in denying his motion for new trial without a hearing, and (4) section 19.02(d) of the Texas Penal Code [3] violates the Sixth Amendment of the United States Constitution [4] by placing the burden on the defendant to prove sudden passion.

We affirm.

### Factual and Procedural Background

Kristen Smith, the sister of the complainant, Brandon Smith, testified that on October 16, 2004, she and the complainant, along with their family and friends, went to the Texas Renaissance Festival. In the late morning, the complainant met appellant, and they had a thirty-minute conversation after appellant asked to borrow a cellular telephone. Ms. Smith next saw appellant later that evening when she and the complainant exited the festival towards a park in order to watch a fireworks display. A man standing with appellant told the complainant that "he could get a hoe like [Ms. Smith] anywhere." In reply, the complainant "said something." Ms. Smith and the complainant's mother, however, told them to ignore him and move along, which they promptly did.

After the fireworks display, Ms. Smith and the complainant exited towards the parking lot and ran into appellant and his group. Brittany Erwin, a girl in appellant's group, and Ms. Smith started yelling at one another. Suddenly, Ms. Smith and Erwin started fighting with each other. The next thing that Ms. Smith remembered was "everybody running" and the complainant "lying on his right-hand side curled up," pointing at appellant and tell-ing Ms. Smith to go get him. Ms. Smith went running after appellant, and, after she grabbed his arm to stop him, he threw her on the ground, causing her to sprain her ankle, and kicked her in the back. Appellant and his group got into their car and tried to run her over before driving off.

Joshua Hamm, the complainant's friend, testified that after Ms. Smith and Erwin started fighting each other, he saw the complainant "with his hands up," not fighting, and Hamm thought it best to break up the fight. After he separated the two girls, "everything ... just started." Hamm started "hollering and actually hitting [himself] with ... [juggling] sticks trying to scare everybody off." He last saw the complainant before the fight with "his hands down by his waist" and palms facing up.[5] He next saw the complainant "on the ground curled up a little bit with [appellant] crouched over him and ... [appellant's friend, Jonathan Damuth,] was stomping on his head and his chest and kicking him while he was on the ground." Therefore, Hamm grabbed Damuth. Hamm last saw appellant in a "squatting position" over the complainant. After Hamm tussled for a while with Damuth, everyone, including Damuth, took off. Hamm then saw that the complainant had been stabbed and was covered with blood.

Steven Lesher testified that he attended the festival with appellant and that, as appellant and he were leaving the festival at dusk, Erwin and Ms. Smith started to fight. James C. Bowman, a member of appellant's group, and the complainant attempted to separate the two girls. Hamm,

---

**2.** *See* U.S. Const. amend. VIII.

**3.** *See* Tex. Penal Code Ann. § 19.02(d) (Vernon 2003).

**4.** *See* U.S. Const. amend. VI.

**5.** Amber Mullican, Hamm's girlfriend, testified that she last saw the complainant "calming somebody down" and that the complainant explicitly told her that he did not have a knife.

a member of the complainant's group, was swinging his juggling sticks and hitting himself in the legs, screaming, "We are all from the Navy[,] [and] we are going to kill you." Lesher never saw Hamm advance or hit anybody with the sticks.[6] Lesher did not notice appellant and the complainant fighting "until probably a minute after it started." When he glanced in their direction, he saw "[appellant] on top of [the complainant] hitting him." Lesher thought that the complainant "was fighting back." Lesher was not sure how it stopped, but when appellant and he left, the complainant was just laying on the ground and not moving. In the car after the fight, appellant stated, "Damn it, fuck that mother fucker" and that he hoped the complainant was dead. Lesher noted that although he did not see the complainant stab appellant, appellant had been stabbed, and appellant told him after the fight that the complainant tried to kill him or stab him first.

Appellant testified that before attending the festival, he bought a knife for work. He stated that he always carried a knife because he worked as an electrician and it was practical for recreational purposes. Being underage, he then paid a friend to purchase him alcohol and went to Bowman's house to wait for Erwin to arrive before heading to the festival. At Bowman's house, appellant drank one beer, took two pills of xanax, and smoked marijuana. Bowman had given him seven pills of xanax, but he gave away the other five to Damuth, a friend. He then went to the festival and drank approximately six beers. He first met the complainant when he needed to borrow a cellular telephone, and a girl in the complainant's group provided him with one. He and the complainant "joked around" together before parting.

A few hours later, around 3:00 to 4:00 p.m., appellant met up with Ms. Smith and the complainant, and they went to the parking lot together and drank approximately two beers each. Appellant smoked more marijuana, while Ms. Smith and the complainant abstained. He went back to the festival, without Ms. Smith and the complainant, and again saw Ms. Smith and the complainant when he was leaving the festival. He put his arm around both Ms. Smith and the complainant in order to tell them about a party that night, and the complainant took offense that appellant had his arm around Ms. Smith. The complainant told appellant, "Get your hands off my sister." Appellant pulled away and told the complainant that he was "sorry," but the complainant "was still pissed[,] and he was yelling at me and cussing at me and stuff[,] and I'm trying to tell him [that] I'm sorry[,] and he wouldn't let it go[,] and we started arguing."

Appellant further testified that when Erwin and Ms. Smith started to fight, the complainant came from appellant's side and "just slugged" appellant in the head. They fought for a bit, and appellant got on top of the complainant and was punching him in the face. Suddenly, appellant saw his blood on his leg, and he thought that the complainant had a knife in his hand. Because he was "scared," appellant started stabbing the complainant with his knife. At this point, the complainant was on top of him because "[w]hen [the complainant] stabbed [appellant], [appellant] fell off and [the complainant] came at [appellant]." Appellant stated that it "sounds right" that the complainant suffered twenty-five knife wounds. Appellant did not take the complainant's knife with him, and he has not seen the knife again.

On cross-examination, appellant testified that when he and the complainant started

---

6. Bowman testified as well that Hamm never advanced upon anybody.

fighting, although he could not exactly see what Hamm was waving because it was too dark, Hamm scared appellant because he was swinging his sticks and yelling that he was going to kill them. Appellant, however, later conceded that at no time was Hamm threatening him with the sticks, and he understood that the sticks were really just toy sticks. When asked to explain appellant's multiple stab wounds in the back, he stated, "I can't; I can't explain it; we were fighting and wrestling around...."

Grimes County Sheriff's Department Investigator A. Jarvis testified that the complainant's autopsy revealed a foreign object in the complainant's body. The Southeast Texas Forensic Center removed the foreign object and discovered that it was the tip of a knife. A February 17, 2005 report confirmed that the silver knife tip came from the murder weapon, a lock-blade pocket knife. Southwestern Institute of Forensic Science Director Dr. Jeffrey Barnard testified that the complainant received thirteen stab wounds, specifically, eleven times in the back and one in the forearm and chest. The complainant also suffered twelve incise wounds.[7] The cause of the complainant's death was from multiple stab wounds, mainly from the stab in the chest, which pierced the heart. The complainant also had a .22 blood alcohol content level.

### Factual Sufficiency

In his first point of error, appellant argues that the evidence is factually insufficient to support the jury's finding[8] that he was not under the influence of sudden passion arising from an adequate cause when he stabbed the complainant because he was "roughly told" to remove his arm from Ms. Smith; Ms. Smith "became engaged in a hair-pulling fight" with Erwin; Hamm "began threatening death," waiving his sticks around; and this "scared" appellant and made him "fear[ ] for his safety." Appellant also relies on his own testimony that the complainant initiated the fight when he "came up and slugged [him] from the side" in the head, "hand-to-hand combat" ensued, and the complainant first "stabbed [him] in the leg with a knife."

▮ When a defendant challenges the factual sufficiency of the rejection of a defensive theory, we review all of the evidence in a neutral light and ask whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim.App.2003). Accordingly, we must determine whether the jury's negative finding is so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. *Hernandez v. State*, 127 S.W.3d 206, 212 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd). We note that a jury is in the best position to evaluate the credibility of witnesses, and we are required to afford "due deference" to the jury's determinations. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006).

▮ Murder is a first-degree felony. TEX. PENAL CODE ANN. § 19.02(c) (Vernon

---

7. Dr. Barnard stated that an incise wound is not as deep as a stab wound and can be called "cutting wounds."

8. In its punishment charge, the trial court asked the jury, "Do you find by a preponderance of the evidence that on the 16th day of October, 2004[,] [appellant] ... caused the death of [the complainant] while [appellant] ... was under the influence of sudden passion arising from an adequate cause?" The jury answered, "No."

2003). However, during a trial's punishment phase, a defendant may attempt to mitigate his punishment by raising the issue as to whether "he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." *Id.* § 19.02(d) (Vernon 2003). "Sudden passion" is "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2) (Vernon 2003). "Adequate cause" is "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1) (Vernon 2003). A defendant "may not rely upon [a] cause of his own making, such as precipitating a confrontation," as an adequate cause. *Naasz v. State,* 974 S.W.2d 418, 423 (Tex.App.-Dallas 1998, pet. ref'd); *see Hernandez,* 127 S.W.3d at 211. Here, the jury found appellant guilty of murder and, during the trial's punishment phase, found that appellant did not act out of sudden passion.

■ Although no witnesses saw how the fight between appellant and the complainant began, Amber Mullican, Hamm's girlfriend, stated that the complainant did not have a knife. As conceded by appellant, the knife that he asserts was used by the complainant was not found. Although appellant suffered one wound, the complainant suffered twenty-five wounds. Moreover, the complainant's autopsy revealed that the tip of appellant's knife was lodged in the complainant's body.

Hamm testified that at one point he saw the complainant not fighting, with his hands at his waist, palms up, but when he next saw the complainant, appellant was "squatting" over him, and Damuth was stomping on complainant. Mullican testified that at one moment, the complainant had "his arms raised ... calming somebody down," and, the next moment, appellant was kneeling over the complainant, punching him with both fists, as the complainant curled up into a fetal position, not fighting back.

Lesher, a member of appellant's group, stated that all he saw of the fight was appellant on top of the complainant, as the complainant attempted to fight back. He explained that, although Hamm did state that he was going to "kill" somebody, Hamm never advanced or hit anybody with his sticks. Bowman also agreed with Lesher that Hamm never advanced upon anybody.

The jury, as the sole judge of the credibility of witnesses and the weight to be given to their testimony, was entitled to believe or disbelieve that the complainant first struck or stabbed appellant. *See Cain v. State,* 958 S.W.2d 404, 408–09 (Tex. Crim.App.1997); *Robles v. State,* 104 S.W.3d 649, 652 (Tex.App.-Houston [1st Dist.] 2003, no pet.). The evidence here is conflicting because Hamm and Mullican testified that the complainant was actually in a nonaggressive posture, while appellant testified that the complainant initiated the altercation by slugging him in the head. *See Dudley v. State,* 992 S.W.2d 565, 568 (Tex.App.-Texarkana 1999, no pet.). Although appellant testified that Hamm "scared" him by swinging his sticks, Bowman and Lesher testified that Hamm never advanced towards appellant. *See Williams v. State,* 35 S.W.3d 783, 787 (Tex. App.-Beaumont 2001, pet. ref'd) (stating that "mere claim of fear does not establish sudden passion" when defendant testified

that he was "afraid" complainant would take defendant's gun and shoot him).

We conclude, viewing the evidence neutrally, that the jury's rejection of appellant's sudden passion issue is not against the great weight and preponderance of the evidence so as to be clearly wrong or manifestly unjust. *See Dudley*, 992 S.W.2d at 568 (finding factually sufficient jury's negative finding on sudden passion, stating, "[g]iven the conflicting testimony involved and that the jury is the sole judge of the weight and credibility of the evidence, there is plenty of room to disbelieve [defendant's] version of the facts and to believe [another witness's] version"). Accordingly, we hold that the evidence is factually sufficient to support the jury's finding that appellant's actions were not the result of sudden passion resulting from an adequate cause.

We overrule appellant's first point of error.

### Constitutionality of Section 19.02(d)

■ In his fourth point of error, appellant argues that, in light of the United States Supreme Court's recent decision in *Cunningham v. California*, section 19.02(d) of the Texas Penal Code violates the right to a fair trial guaranteed by the Sixth Amendment because it requires defendants to prove sudden passion as an affirmative defense by a preponderance of the evidence. *See* 549 U.S. 270, 127 S.Ct. 856, 863–64, 166 L.Ed.2d 856 (2007). Appellant notes that in *Cunningham*, the Court stated, "[U]nder the Sixth Amendment, any fact that exposes a defendant to a *greater* potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Id.* (emphasis added).

However, the court in *Cunningham* addressed the constitutionality of California's

determinate sentencing law, which allowed a trial judge to make factual determinations by a preponderance of the evidence from a non-exhaustive list of aggravating circumstances that were neither pleaded to by the defendant or found by the jury, *increasing* a defendant's sentence to the "upper term" under California's statutory scheme. *Id.* at 860–62. *Cunningham* is inapposite because a jury finding of sudden passion under section 19.02(d) of the Texas Penal Code *decreases* the punishment range, rather than *increases* the punishment range. *See* Tex. Penal Code Ann. § 19.02(d) (mandating that defendant may prove at punishment stage of trial whether he was under "immediate influence of sudden passion arising from an adequate cause," thereby making offense second-degree felony, rather than first-degree felony).

We follow the Supreme Court's decision in *Patterson v. New York*, in which the Court held that New York's statute, which required defendants to prove sudden passion as an affirmative defense by a preponderance of the evidence, was constitutional. 432 U.S. 197, 198, 205, 97 S.Ct. 2319, 2320, 2325, 53 L.Ed.2d 281 (1977). Likewise, the Texas Court of Criminal Appeals in *Perry v. State* reasoned that "[a] state may, without violating due process, even require a defendant to prove facts in mitigation of punishment . . . [like] extreme emotional disturbance." 158 S.W.3d 438, 448 n. 14 (Tex.Crim.App.2004); *see Vasquez v. State*, 2 S.W.3d 355, 362 (Tex.App.-San Antonio 1999, pet. ref'd); *Green v. State*, 971 S.W.2d 639, 644 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd); *Jones v. State*, 955 S.W.2d 438, 440 (Tex. App.-Fort Worth 1997, pet. ref'd); *Fleming v. State*, 956 S.W.2d 620, 622 (Tex. App.-Eastland 1997, pet. ref'd); *Robinson v. State*, 945 S.W.2d 336, 342 (Tex.App.-Austin 1997, pet. ref'd).

Accordingly, we hold that section 19.02(d) of the Texas Penal Code does not violate the Sixth Amendment.

We overrule appellant's fourth point of error.

### Cruel and Unusual Punishment

◼ In his second point of error, appellant argues that the trial court erred in assessing a punishment which is "grossly disproportionate and oppressive" because he was "nineteen years old at the time of [the complainant's]" death, he had "no prior felony convictions," and "[n]o evidence was presented at trial which indicated a propensity towards the violence which occurred on the night of the alleged murder." Appellant asserts that his "sentence is grossly disproportionate when compared to the national average of all jurisdictions, exceeding the mean by almost 36 years."

Here, appellant was convicted of murder, which is a first-degree felony. TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003). The punishment for a first-degree felony is confinement for life or any term of not more than ninety-nine years or less than five years and, in addition to imprisonment, punishment by a fine not to exceed $10,000. *Id.* § 12.32 (Vernon 2003). As noted above, the jury sentenced appellant to fifty-five years of confinement and a $10,000 fine. Thus, appellant received a punishment within the applicable statutory range.

◼ The Eighth Amendment of the United States Constitution requires that a criminal sentence be proportionate to the crime for which a defendant has been convicted. *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983); *see also Baldridge v. State,* 77 S.W.3d 890, 893 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (stating that Eighth Amendment has narrow proportionality principle). However, in order to preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX.R.APP. P. 33.1(a); *Rhoades v. State,* 934 S.W.2d 113, 120 (Tex.Crim.App.1996) (noting that defendant waived any error because he presented his argument for first time on appeal); *Wynn v. State,* 219 S.W.3d 54, 61 (Tex. App.-Houston [1st Dist.] 2006, no pet.) (holding that defendant's failure to object to his life sentence of imprisonment as cruel and unusual punishment waived error); *Solis v. State,* 945 S.W.2d 300, 301 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd) (holding defendant could not assert cruel and unusual punishment for first time on appeal).

After the trial court announced its sentence at the punishment hearing, appellant made no objection to the trial court about the punishment assessed, nor did he assert his complaint in a motion for new trial. *See Solis,* 945 S.W.2d at 301. Appellant asserts that he preserved error, however, under a heading in his motion for new trial, in which he stated that "[t]he trial court has the discretion to grant a new trial in the interests of justice . . . ." Appellant quotes *Mullins v. State,* a Texas Supreme Court case, under that heading:

> The discretion of the [d]istrict [c]ourt, in granting new trials, is almost the only protection to the citizen against the *illegal or oppressive verdicts* of prejudiced, careless, or ignorant juries, and we think the [d]istrict [c]ourts should never hesitate to use that discretion whenever the ends of justice have not been attained by those verdicts.

37 Tex. 337, 339–40 (1872–1873) (emphasis added). Appellant asserts in his reply brief, without citation to any legal authori-

ty, that "[a]ppellant's request that the [c]ourt's discretion be used to remedy an 'illegal or oppressive verdict' clearly encompasses [appellant's] point of error that the jury's punishment is excessive pursuant to the Eighth Amendment of the United States Constitution."

In *Rezac v. State,* the Texas Court of Criminal Appeals stated that "[i]n order for an issue to be preserved on appeal, there must be a timely objection which *specifically* states the legal basis for the objection." 782 S.W.2d 869, 870 (Tex. Crim.App.1990) (emphasis added); *see also Rhoades,* 934 S.W.2d at 119 (reasoning that one must specifically state legal basis for objection as well). On its face, the relevant heading in appellant's motion appeals to the trial court's discretion in granting a new trial. At no time did appellant argue that his sentence violated the Eighth Amendment of the United States Constitution. Accordingly, we hold that appellant has failed to preserve his Eighth Amendment complaint for review.

We overrule appellant's second point of error.

### Evidentiary Hearing and Motion for New Trial

■ In his third point of error, appellant argues that the trial court erred in denying his motion for new trial without an evidentiary hearing because he "presented specific evidence, in the form of affidavit testimony from a witness other than a juror in the case, which indicated that the jurors had begun discussing the facts of the case prior to receiving all evidence being charged by the [c]ourt." He further argues that a hearing on his motion for new trial was "mandatory" because he asserted "grounds for relief which are extrinsic to the record." Appellant notes that he set the motion for a

hearing and "subpoenaed jurors to attend the hearing."

In his motion for new trial, appellant asserted that juror misconduct occurred when "the jury began deliberating prior to receiving the case from the court and/or had made determinations regarding defendant's guilt prior to receiving all the evidence in this case." In support of his motion, appellant attached the affidavit of appellant's mother, Sue Noland, who testified that during a break in the trial, before deliberations, two jurors discussed the case together:

They were discussing the case [during] the [second] week of trial. Before the defense even started[,] I heard them say [that appellant] had no business trying to pick[ ]up girls with a knife in his pocket. Also[,] they said something about him drinking. I was in the middle of the hall watching them, trying to hear what they were saying. They noticed me looking[,] so they walked outside. I followed them out. They were still talking about how they thought he was guilty because he was drinking and hitting on girls with a pocket knife in his pocket. I looked them both in the eyes. They got uneasy and stopped talking.

Based on Ms. Noland's testimony, appellant asserted that the jurors "had made determinations regarding [appellant's] guilt...."

■ We review a trial court's denial of an evidentiary hearing on a motion for new trial for an abuse of discretion. *Reyes v. State,* 849 S.W.2d 812, 816 (Tex.Crim. App.1993). The right to a hearing on a new trial motion is not absolute. *Rozell v. State,* 176 S.W.3d 228, 230 (Tex.Crim.App. 2005). A defendant is "entitled *to a hearing* on his motion for new trial if the motion and accompanying affidavit(s) 'rais[e] matters not determinable from the record, upon which the accused could be

entitled to relief.'" *Wallace v. State,* 106 S.W.3d 103, 108 (Tex.Crim.App.2003) (quoting *Reyes,* 849 S.W.2d at 816). The motion for new trial and accompanying affidavits need not establish a prima facie case. *Jordan v. State,* 883 S.W.2d 664, 665 (Tex.Crim.App.1994). They need only reflect that reasonable grounds exist for holding a hearing, the purpose of which is to permit the defendant an opportunity "to fully develop the [matters] raised in his motion." *Id.*

The State argues that appellant was not entitled to a hearing because Texas Rule of Evidence 606(b) prohibits a juror's testimony about matters or statements made during jury deliberations[9] and "[a]ny discussion regarding the case occurring among or between jurors is part of jury deliberations regardless of the time and place where it occurs." In support of its argument, the State relies on *Baley v. W/W Interests, Inc.,* 754 S.W.2d 313, 316 (Tex.App.-Houston [14th Dist.] 1988, writ denied). However, the Texas Supreme Court has expressly disapproved of this "expansive" definition of deliberations. *See Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 372 (Tex.2000). In *Jackson,* the court concluded that Rule 606(b) does not bar juror testimony about a prior conversation during a trial break. *Id.* However, because the testimony of one juror about his conversation with another juror during a trial break did not conclusively establish that the second juror prevaricated or concealed bias during voir dire, the court held that the trial court did not abuse its discretion in denying the defendant a new trial. *Id.*

■ In criminal cases, a movant for a new trial based on jury misconduct must prove that (1) misconduct occurred and (2) the misconduct resulted in harm to the movant. *Gomez v. State,* 991 S.W.2d 870, 871 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd) (citing *Garza v. State,* 630 S.W.2d 272, 274 (Tex.Crim.App.1981)). In *Gomez,* we held that a defendant did not demonstrate harm when two jurors discussed the case with each other in an elevator after deliberations had begun in the punishment phase of trial. *Id.* at 871–73; *compare Wilson v. Tex. Parks & Wildlife Dep't,* 853 S.W.2d 825, 831 (Tex.App.-Austin 1993) (ruling that juror discussion amongst themselves in men's restroom "is not juror misconduct"), *rev'd on other grounds,* 886 S.W.2d 259 (Tex.1994), *with Green v. State,* 754 S.W.2d 687, 687–88 (Tex.Crim.App.1988) (holding that reasonable grounds for hearing existed when jurors spoke with complainant's mother), *overruled on other grounds by Carranza v. State,* 960 S.W.2d 76, 80 n. 6 (Tex.Crim. App.1998), *and McIntire v. State,* 698 S.W.2d 652, 659–60 (Tex.Crim.App.1985) (holding that juror communication with unauthorized person-third party-was reasonable grounds to warrant hearing). In fact, we noted that although we did not condone the jurors' conduct, which contradicted the explicit instructions from the trial court, we found "no case holding that a trial court abused its discretion in denying a motion for new trial when two jurors discussed the case with each other on breaks." *Gomez,* 991 S.W.2d at 872–73. This holds true today.

Here, Ms. Noland stated that, during a break in the trial, she heard two jurors discussing the evidence presented at trial and their contemporaneous impressions about that evidence. However, Ms. Noland did not testify that the two jurors spoke with a third party, nor does her testimony reasonably show that any alleged juror misconduct influenced the jury's verdict, especially considering the

---

9. *See* Tex.R. Evid. 606(b).

**154**

fact that the jurors discussed evidence that was properly before them. As in *Gomez,* here, there is no evidence that the two jurors discussed evidence with anyone outside the jury or discussed inadmissible or outside evidence. *Id.* at 872. Thus, the trial court could have reasonably concluded that Ms. Noland's affidavit did not "'rais[e] matters not determinable from [what was before it], upon which the accused could be entitled to relief.'" *See Wallace,* 106 S.W.3d at 108 (quoting *Reyes,* 849 S.W.2d at 816).

Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's new trial motion without a hearing.

We overrule appellant's third point of error.

### Conclusion

We affirm the judgment of the trial court.