

NUMBER 13-12-00535-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ANDRE SAMUEL,**                                                            **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                      **Appellee.**

---

### On appeal from the 117th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Perkes and Longoria
### Memorandum Opinion by Justice Longoria

This appeal ensued after the trial court revoked Andre Samuel's community supervision and imposed a seven year prison sentence for two counts of indecency with a child. *See* TEX. PENAL CODE ANN. § 21.11 (West 2011). We uphold the revocation because there is sufficient evidence to support the trial court's finding that Samuel

committed the "new offense" of indecent exposure in violation of the laws of this State and the terms and conditions of his community supervision, as alleged in the State's motion to revoke. *See id.* § 21.08(a) (West 2011); *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012) ("[A] single violation will support revocation."). Furthermore, although Samuel has also challenged the constitutionality of his seven year prison sentence on the basis that it is disproportionate to the seriousness of the offenses he committed, *see* U.S. CONST. amends. VIII, XIV, we conclude that he failed to preserve that issue by failing to make an appropriate objection to the trial court. *See* TEX. R. APP. P. 33.1(a). Accordingly, the error, if any, was not preserved for our review. *See id.* The judgment of the trial court is therefore affirmed.

## I. BACKGROUND

Samuel pled guilty to two counts of indecency with a child and was originally given a ten-year prison sentence for each offense, with the sentences to run concurrently. *See* TEX. PENAL CODE ANN. § 21.11. However, the jury recommended that the sentences be suspended. Pursuant to the jury's verdict, the trial court placed Samuel on community supervision for a period of ten years. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 2(2) (West Supp. 2011). Subsequently, the State filed a motion to revoke Samuel's community supervision alleging that Samuel committed two violations of the terms and conditions of his community supervision: (1) he committed the offense of indecent exposure, *see* TEX. PENAL CODE ANN. § 21.08(a); and (2) he failed to pay court-ordered fees. Samuel pled "not true" to the two alleged violations.

The trial court held an evidentiary hearing during which a number of witnesses were called to testify for both sides. The State waived its right to make an opening

2

statement and proceeded directly to the presentation of its evidence, almost all of which concerned the indecent-exposure violation. Among other witnesses, the State called the victim of the offense. She testified that on the afternoon of May 7, 2012, a "black" man exposed his erect penis to her while she was attempting to exit a building located on the east campus of Del Mar College in Corpus Christi. She further testified that she witnessed the same individual flee the scene in a "bright green" car. Without objection, she positively identified Samuel in the courtroom as the individual who exposed himself to her.

In his defense, Samuel called two witnesses who testified that, at the time in question, he owned and drove a "silver" car. Samuel also took the stand. He testified that he drove a "silver" car, that he did not visit the Del Mar College campus at any time on May 7, 2012, and that on the afternoon of May 7, 2012, he was at the office of the Texas Department of Public Safety ("DPS") taking a test to obtain a commercial driver's license ("CDL"). Samuel also presented additional evidence, including his application for the CDL and the test record for the CDL, which was signed by him and dated May 7, 2012.

To prove the second alleged violation, the State called Samuel's probation officer, who testified that Samuel had failed to pay outstanding fees in the amount of $218.[1] Neither side presented any evidence about whether Samuel had the ability to pay the outstanding fees.[2] Nor did the trial court make any inquiries into the circumstances of Samuel's failure to pay.

---

[1] These fees consisted of $108 in court costs, $10 in sex offender fees, and $100 in monthly supervision fees.

[2] We note that one witness for the defense testified that Samuel has been employed as a cashier

3

In his closing argument, Samuel's attorney argued that the State had failed to prove the indecent-exposure violation. He questioned the reliability of the victim's in-court identification of Samuel as the perpetrator of the offense. He argued that it was influenced by a photograph lineup in which Samuel's picture was "the biggest and brightest photograph." Although he conceded that "this photograph lineup may not be impermissibly suggestive," he told the court that there was no positive identification because "people make mistakes with identification all the time" and the victim had merely picked out "a black man in jail clothes."

Counsel then went into the conflicts in the evidence. He pointed out that the victim had testified that the perpetrator was approximately five feet and eight inches tall, was in his late twenties or early thirties, and was not wearing glasses. In contrast, Samuel is five feet and four inches tall, is in his late thirties, and wears prescription glasses. Counsel also talked about the "bright green" car the victim described, how there was no evidence that Samuel drove a "bright green" car, and how the uncontroverted evidence established that Samuel owned a "silver" car. Finally, counsel discussed Samuel's alibi about being at the DPS office when the offense occurred, but he acknowledged that the alibi was not "airtight."

With respect to the second alleged violation, Samuel's attorney argued in relevant part as follows:

> I'm not concerned about the other allegations because I know that this Court, or any reasonable court is not going to send a man to prison because he's behind on a hundred bucks on some payment. So I'm not concerned about that. I just didn't want to plead true to anything or waive any rights.

at a Kentucky Fried Chicken restaurant since 2009, which is evidence of income and arguably some circumstantial evidence of his ability to pay the outstanding fees. However, there was no further testimony or evidence bearing on the issue.

4

In its closing argument, the State argued the merits of its case with respect to the alleged violation involving the offense of indecent exposure. However, it did not discuss the alleged violation based on Samuel's failure to pay court-ordered fees. Nor did the State respond to counsel's argument that the alleged failure-to-pay violation, standing alone, was not a valid basis for revoking Samuel's community supervision.

At the conclusion of the hearing, the trial judge found that Samuel failed to pay $218 in fees in violation of the terms and conditions of his community supervision, as alleged by the State. However, the trial judge stated that she would not revoke Samuel's community supervision based solely on the technical violation:

> I'm going to find that allegation No. 1 is true. I'm gonna find allegation No. 2 is true, but I could tell you, as you probably already know, there's no way that I would revoke somebody on failure to pay $218. In fact, without another allegation, the Code of Criminal Procedure prevents me from doing so. It is the more serious allegation of another event involving a sexual act that is of concern to this Court.

In her judgment revoking Samuel's community supervision, the trial judge found "all" the State's alleged violations to be true and assessed a seven year prison sentence. Samuel now appeals by two issues.

## II. ANALYSIS

### A. Standard of Review and Applicable Law

We review a trial court's order revoking community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (citing *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)). In a community-supervision revocation hearing, the State bears the burden of showing by a preponderance of the evidence that the defendant committed at least one violation of

5

the terms and conditions of his community supervision. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). "[T]he trial judge is the sole trier of fact and determines the credibility of the witnesses and the weight to be given [to] their testimony." *Cherry v. State*, 215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet. ref'd). "We review the evidence in the light most favorable to the trial court's ruling." *Id.* If the State does not meet its burden of proof with respect to at least one alleged violation, the trial court abuses its discretion in revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94.

## B. Revocation of Community Supervision

In his first issue, Samuel challenges the sufficiency of the evidence to support the trial court's finding that the alleged violation involving the offense of indecent exposure was "true." According to Samuel's attorney, this was by far "the most damning allegation" in the State's motion. *See Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012) ("In a revocation proceeding, the trial court has discretion to revoke community supervision when a preponderance of the evidence supports one of the State's allegations that the defendant violated a condition of his community supervision.").

In relevant part, the penal code defines the offense of indecent exposure as follows:

> A person commits an offense if he exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act.

*See* TEX. PENAL CODE ANN. § 21.08(a).

6

It is undisputed that at the hearing on the motion to revoke, the State proved that on May 7, 2012, a "black" man standing in a building on the east campus of Del Mar College exposed his erect penis to a female student as she was attempting to exit the building. There is no dispute that this individual committed the offense of indecent exposure. *See id.* However, Samuel contends that the State failed to prove by a preponderance of the evidence that he was the individual who committed the offense. *See Cobb*, 851 S.W.2d at 873.

At the hearing on the motion to revoke, the victim positively identified Samuel as the individual who exposed his penis to her. We also note that the State presented additional evidence that further corroborated the victim's in-court identification of Samuel.[3] Samuel did not make any objections to the admissibility of the in-court identification, *see* TEX. R. EVID. 103(a)(1), and therefore, he has waived any error in the trial court's admission of the testimony. *See* TEX. R. APP. P. 33.1(a)(1). Furthermore, the positive identification of a defendant as the perpetrator of a crime is sufficient to support a conviction. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978) ("The prosecutrix' identification of appellant as the man who raped her is sufficient."). Therefore, it is necessarily sufficient to meet the lower standard of preponderance of the evidence applicable in this case. *See Cobb*, 851 S.W.2d at 873.

We recognize that Samuel presented evidence of an alibi, but even his attorney acknowledged that the alibi was not "airtight." "As the sole judge of the weight and

---

[3] In addition to the testimony of the victim, the State also presented a surveillance video showing a man walking out of the building where the offense occurred. Diane Berry testified that she works for the City of Corpus Christi and registers sex offenders. Berry testified that she is familiar with Samuel because he previously registered as a sex offender. Berry further testified that when she saw the video footage from the surveillance camera, she "immediately thought of . . . Samuel." At the hearing, she testified that the man in the video looked like Samuel.

7

credibility accorded any witness's testimony, the [judge] was free to believe or disbelieve the testimony of all witnesses, and to accept or reject any or all of the evidence produced by the respective parties." *Cleveland v. State*, 177 S.W.3d 374, 380 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). After hearing the testimony and considering the evidence, the judge resolved the conflicts in favor of the State. *See Cherry*, 215 S.W.3d at 919. Because her finding is supported by sufficient evidence to meet the preponderance of the evidence standard of proof, we may not disturb it on appeal. *See Rickels*, 202 S.W.3d at 763. Accordingly, Samuel's first issue is overruled.

## C. Punishment

In his second issue, Samuel argues that the punishment assessed by the trial court was disproportionate to the seriousness of the offenses in violation of the Eighth and Fourteenth Amendments to the United States Constitution. *See* U.S. CONST. amends. VIII, XIV. The State contends that Samuel forfeited this argument by failing to object at trial. *See* TEX. R. APP. P. 33.1(a)(1). We agree.

To preserve error for appellate review, the complaining party must present a timely and specific objection to the trial court and obtain a ruling. *See id.* A party's failure to specifically object to an alleged disproportionate or cruel and unusual sentence in the trial court or in a post-trial motion waives any error for the purposes of appellate review. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); *Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("[I]n order to preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present

8

to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired.").

Having reviewed the record, we note that Samuel did not object to the sentence or assert that it was disproportionate to the seriousness of the offenses. *See* TEX. R. APP. P. 33.1(a)(1). Accordingly, he did not preserve the issue for review in this appeal. *See Rhoades*, 934 S.W.2d at 120; *Noland*, 264 S.W.3d at 151. His second issue is therefore overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
NORA L. LONGORIA
Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
5th day of December, 2013.

9