

# NUMBER 13-17-00364-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THOMAS CLARK,                                                    Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

### On appeal from the 347th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Memorandum Opinion by Justice Benavides**

Appellant Thomas Clark appeals his probation revocation and sentence imposed by the trial court. By two issues, Clark argues that: (1) the evidence was insufficient to justify the trial court's revocation of probation and (2) the trial court's sentence of imprisonment was constitutionally disproportionate and excessive. We affirm.

## I.    BACKGROUND

In August 2011, Clark pleaded guilty to eight counts of aggravated sexual assault of a child, a first-degree felony, and was sentenced to ten years' deferred adjudication probation.   *See* TEX. PENAL CODE ANN. § 22.021 (West, Westlaw through 2017 1st C.S.).

In July 2013, the State filed its first motion to adjudicate probation.   The State alleged:   (1) Clark was unable to pay his urinalysis (UA) fee; (2) Clark was discharged from Hamilton Group Psychology's sex offender treatment program due to a lack of progress in January 2013; and (3) Clark was discharged from Family Counseling's sex offender treatment program for failing to accept responsibility in June 30, 2013.   After Clark entered a plea of not true, the trial court found the allegations true, continued Clark on probation and ordered the following sanctions:   (1) zero tolerance, (2) thirty days' confinement in the Nueces County Jail, and (3) to re-enter the sex offender treatment program.

In September 2016, the State filed its second motion to revoke probation.   In the second motion, the State alleged that:   (1) Clark had failed to pay court costs, a sex offenders fee, monthly supervision fee, and his UA fee; (2) Clark was discharged from Grey Matters sex offender treatment program in August 2016; (3) Clark failed to schedule a polygraph within sixty days of the trial court order; and (4) Clark had access to the internet on his cellular phone in violation of the terms of his probation.   In October, Clark entered a plea of true to the allegations.   The trial court elected to continue him on probation a second time and ordered the following sanctions:   (1) zero tolerance, (2) sixty days' confinement in the Nueces County Jail, and (3) ordered him to re-enter the Grey

2

Matters sex offender treatment program.

In February 2017, the State filed its third motion to revoke probation. In the third motion, the State alleged that: (1) Clark failed to pay court costs, his sex offender fee, and a monthly supervision fee; and (2) was discharged from the Grey Matters sex offender treatment program in February 2017.

The trial court held a hearing regarding the allegations in the State's motion to revoke probation. Clark pleaded not true to all allegations. The witnesses who testified were Jennifer Saenz, the custodian of records for adult probation; Leigh Motes and Sharon Sanders, the co-owners of Grey Matters, the sex offender treatment program Clark attended; and Antonio Clark (Antonio), the appellant's brother.

Saenz testified based on the probation department's records. She stated the department records showed that Clark received $953 from a disability check and $120 in food stamps. She stated that Clark self-reported paying $349 for rent to Antonio and $204 in child support. Saenz knew Clark's attorney was court-appointed and he was required to pay other costs as a condition of probation, as well as his sex offender treatment program costs.

Motes testified that she knew Clark from Hamilton Group Psychology, as well as Grey Matters.[1] Clark was on a zero-tolerance contract[2] with Grey Matters, after being

---

[1] It appears Hamilton Group Psychology became Grey Matters during the term of Clark's probation.

[2] The zero tolerance contract contained the following conditions: (1) Clark could have no excused absence for the first 90 days, including medical appointments that could have been made on other days; (2) Clark could have no unexcused absences for the first 180 days and could not be late (including being tardy); (3) the weekly treatment fee was $45.00 and Clark would be turned away from the session if he did not have the full amount; (4) Clark would complete two homework assignments per month; and (5) after 90 days, Clark would have an individual session with a provider to assess his progress in the program,

discharged five prior times. Motes stated Clark knew he had to have the $45.00 fee available to participate in each session, as well as complete homework assignments due based on the time he has been involved in their program and conditions of the contract.

Motes explained that Clark attended nine sessions from December 8, 2016 to February 22, 2017 when he was discharged from the program. In December 2016, Clark attended on the 8th and brought homework,[3] the 15th and brought homework, the 22nd and brought homework, and the 29th and had no homework. Motes agreed that Clark was able to pay each time and complied with the homework requirement for the month of December. In January 2017, Clark attended on the 5th with homework, but it was not acceptable, the 12th with homework, on the 19th with no homework, and on the 26th with no money for the session fee and no homework. Motes stated that Clark was allowed to stay on the 26th even though he did not bring the required funds. She also explained that even though Clark brought homework on the 5th, it was not acceptable, but they made corrections to it and Clark was asked to complete the corrections at home and re-present it to the group. Motes stated that Clark never brought the January 5th homework back to the group session. In February 2017, Clark attended on the 2nd with no homework, but paid a $90 fee for that session and the session on January 26th. On the 9th, Clark was absent, but later brought an excuse from his doctor and was given credit, even though the absence was a violation of the contract. On the 16th, Clark showed without the fees again and was asked to leave. Motes filed a report with probation and

---

costing $90.00. Any violation would be referred to the probation department. Clark initialed the conditions and signed the contract on December 8, 2016.

[3] Clark brought the required fees to participate unless otherwise noted.

discharged Clark from the program for committing multiple violations of the contract.[4]

Motes testified that Clark was not progressing at a normal pace due to his lack of homework. Motes explained that the program consists of eight modules and in over six years, Clark was working in module three. Although Clark argued the lack of progress was due to his low intellectual state,[5] Motes stated that Clark could participate in the sessions when he wanted to and could complete the homework. Even though Grey Matters could adjust the program and make allowances for low intellectual functioning, Motes believed that Clark never showed or expressed a need for the accommodations.

Motes also explained to the court that people can actively participate in sessions without the homework, class can be made up later in the week if someone does not have the fees available, and if someone came weekly and participated, the eight modules could be completed in two and a half years. She stated that after giving Clark chances by letting prior violations go, she dismissed him for violation of the homework requirement, violation of the absence conditions, and lack of fees.[6]

Sanders testified that she completed the testing of Clark, but IQ is not determined based on one test. Sanders stated that treatment is based on her testing and adjusted as needed due to the results. She felt that although Clark tested at "borderline

---

[4] Although Clark included the $90 individual session fee in determining the amount necessary per month, Clark had not been ordered to participate in an individual session at the time he was discharged. Motes stated that it was required after the first 90 days, and then it would be required as necessary throughout the duration of the program.

[5] Clark tested at as "borderline intellectual functioning," meaning he is "below low average but above. . . what the public would call mental retardation" according to Sanders's IQ testing.

[6] During the hearing, the State agreed to not consider the other lacking fees as part of the revocation.

intellectual functioning," he should have been able to complete the modules easily. Sanders also agreed that she was not in the treatment room during sessions.

Antonio testified that Clark lives with him and his family. He did agree that he asked Clark for rent: $300 in December, $400 in January, and $300 in February for bills and other costs. Antonio stated that Clark lives on a limited income and receives a disability check and food stamps. Antonio knew Clark was attempting to comply with the terms of his probation but was unaware that Clark did not comply with the treatment program conditions. Antonio stated that the Grey Matters "ladies" were always adding costs to Clark, which was why he was not complying.

The trial court found all the allegations in the revocation to be true and proceeded to punishment. At punishment, B.S., the complainant in the underlying sexual assault case, Jaime Gonzales, Clark's probation officer, and Antonio testified.

B.S. testified that she was still traumatized from the abuse, which occurred when she was five years old. She also stated that she occasionally sees Clark in the Corpus Christi area and he acknowledges her and either makes faces or "flips her off." B.S. asked the trial court to send Clark to prison.

Antonio testified that Clark is a good person and tries to help his family out. Antonio explained how Clark took care of their mother and helped him deal with his PTSD. Antonio did not think Clark should go to prison.

Gonzales stated that Clark had been discharged from both of the sex offender treatment programs offered. Gonzales testified that at a prior revocation hearing, he understood that Clark would live with Antonio, so he would be able to afford paying the

6

treatment costs.   Gonzales stated that Clark did tell him on February 15th and 23rd that he did not have the fees for his treatment session the following day.[7]   Gonzales agreed he did not have problems with Clark reporting and abiding by his curfew.   He also testified that he did not look into other sex offender treatment programs because after Clark's second revocation proceeding, Gonzales understood that the living arrangement would prevent money from being an issue.

At the conclusion of the revocation hearing, the trial court took into account the prior attempts to help Clark comply.   The court stated:

> You have had chances, after chances, after chances.   You had your first motion to revoke probation, and then a second motion to revoke probation. After the first one, you were given another opportunity to try to get back on track.   There were some other issues besides payment, obviously.   The next motion to revoke your probation I then put you in – on zero tolerance because we came up with a solution.   And, you know, your attorney is quoting me from my last hearing saying I won't put somebody in prison for being indigent, and I a hundred percent agree with that.   I would not do that.

The trial court adjudicated Clark's guilt and sentenced him to fifty years' imprisonment in the Texas Department of Criminal Justice–Institutional Division.   This appeal followed.

## II.   EVIDENCE WAS SUFFICIENT

By his first issue, Clark alleges the evidence was insufficient to justify the revocation.

### A.   Standard of Review

"Appellate review of an order revoking probation is limited to abuse of the trial court's discretion."   *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)

---

[7]   Clark had been discharged prior to the February 23rd statement.

(quoting *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)).   In determining questions regarding sufficiency of the evidence in a probation revocation case, the burden of proof is by a preponderance of the evidence.   *Id.*   The court of criminal appeals has stated that "an order revoking probation must be supported by a preponderance of the evidence; in other words, that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation."   *Id.* at 763–64 (quoting *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)).

### B.      Applicable Law and Discussion

Although the crux of Clark's argument during the probation revocation hearing was his inability to afford the treatment fees, the State alleged two allegations in their motion. The conditions contained in the motion to revoke were (1) to pay additional court costs, sex offenders fees, and a monthly supervision fee and (2) Clark was to attend and participate in a sex offender treatment program and was unsuccessfully discharged from the program.

Texas has an "ability-to-pay" statute, which requires the State to prove that a defendant was able to pay and failed to pay certain fees.   *Gipson v. State*, 383 S.w.3d 152, 157 (Tex. Crim. App. 2012).   In *Gipson,* the trial court revoked the defendant's probation based on a failure-to-pay allegation alone.   *See id.* at 153.   Here, although the State did allege a failure-to-pay, the hearing centered around Clark's failure to comply with the sex offender treatment program rules.   Although he claimed he was mainly discharged for his inability to pay a $45 fee to attend counseling sessions, the State put on evidence that he was discharged for his failure to comply with the zero-tolerance

8

contract, based on absences, homework requirements, and fees.

After hearing the evidence, the trial court addressed all the violations of the contract. The trial court acknowledged that Clark received a disability check and had limited income, but also heard evidence of his attendance issues and lack of homework assignments. Motes testified that Clark knew what was required of him since he had been in their program for over six years and agreed to the zero-tolerance contract. Clark attended and participated upon starting the program, but his progress seemingly dwindled as the weeks passed.

Since it was the third motion to revoke, the trial court stressed how it had given Clark multiple opportunities to come into compliance and finish the treatment, but he refused to be successful. Therefore, the trial court found all the State's allegations true and sentenced Clark to imprisonment.

The trial court did not abuse its discretion for finding the allegations in the motion to revoke true and weighed the history of the case in determining its sentence. We overrule Clark's first issue.

### III. EXCESSIVE SENTENCING

By his second issue, Clark argues that the trial court's sentence of imprisonment constituted a constitutionally excessive sentence.

### A. Applicable Law

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. Even though within the range permitted by law, a sentence may

9

nonetheless be disproportionate to the gravity of the offense. *See Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006).

To preserve error for appellate review, the complaining party must present a timely and specific objection to the trial court, and obtain a ruling. TEX. R. APP. P. 33.1(a). A party's failure to specifically object to an alleged disproportionate or cruel and unusual sentence in the trial court or in a post-trial motion waives any error for the purposes of appellate review. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); *Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("[I]n order to preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired.").

## B.    Discussion

Generally, punishment assessed within the punishment statutory range is not subject to a challenge for excessiveness. *Lawrence v. State*, 420 S.W.3d 329, 333 (Tex. App.—Fort Worth 2014, pet. ref'd). When community supervision is revoked, the trial court may generally impose any punishment within the range authorized by statute. *See id.* When reviewing excessiveness in a case in which the trial court has revoked probation, we do not weigh the sentence against the gravity of the violations of the community supervision, but rather the gravity of the initial offense to which the appellant pleaded guilty. *See id.*; *Buerger v. State*, 60 S.W.3d 358, 365–66 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (appellant's sentence rests upon adjudication of guilt for crime

10

alleged, not appellant's violation of community supervision requirements that led to revocation).

Having reviewed the record, we note that appellant did not object to an alleged disproportionate or cruel and unusual sentence in the trial court or in a post-trial motion. *See* TEX. R. APP. P. 33.1(a); *Arriaga v. State*, 335 S.W.3d 331, 334 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Accordingly, appellant has waived any error for purposes of appellate review. *See Rhoades*, 934 S.W.2d at 120; *Noland*, 264 S.W.3d at 151. However, even if Clark had objected to the trial court's sentence, his original charge was eight counts of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021. B.S. testified that she is still traumatized as an adult for the abuse she endured as a five-year-old child. Therefore, the trial court was within the range for a first-degree felony by imposing a fifty-year prison sentence. Clark's second issue is overruled.

## III.    CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
26th day of July, 2018.

11