

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00170-CR
No. 02-23-00171-CR

_____

ANDRE DWAYNE WASHINGTON, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court Nos. 1668908, 1668909

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

Appellant Andre Dwayne Washington appeals from the trial court's judgment adjudicating him guilty and sentencing him to twelve years' confinement. In a single issue, he argues that the trial court abused its discretion by adjudicating him guilty because it "heard the evidence wrongly." We will affirm.

## I. BACKGROUND

After pleading guilty to the felony offenses of possession with intent to deliver fentanyl and cocaine, the trial court placed Washington on deferred adjudication for three years on each charge. While still on deferred adjudication, the State petitioned the trial court to proceed to adjudicate Washington guilty on both charges. It alleged that he had committed a new drug offense for possession of marijuana and numerous other violations of the terms and conditions of his community supervision.[1]

At the adjudication hearing, Washington pleaded true to all of the allegations in the State's petitions. A probation officer and Washington's girlfriend testified at the hearing. The probation officer testified briefly about Washington's new drug offense and his failures to complete a treatment program, and she opined that Washington needed in-custody treatment for substance abuse. The girlfriend testified that she had been dating Washington for about a year. She conceded to knowing that he was on

---

[1]Specifically, the petition alleged that Washington had failed ten drug tests, admitted to using marijuana thirteen times, failed to submit to a drug test four times, submitted diluted urine samples three times, and failed to complete an outpatient treatment program for substance abuse.

community supervision and that he had engaged in drug use at the beginning of their relationship,[2] but she stated that he had stopped using in recent months. When asked if she knew why he had been placed on community supervision, the following exchange occurred:

Q: Do you know why he's on probation?

A: Yes, I do.

Q: Do you know what he was doing?

A: Yes, I do.

Q: What was he doing?

A: He was manufacturing and delivering.

Q: Okay. What does that mean?

A: He had drugs in his possession and he was selling it to people.

Q: Do you know what drugs?

A: Yes, I do.

Q: What were they?

A: I believe methamphetamine.

Q: And fentanyl?

A: I believe so, yes.

---

[2]She said that Washington had used marijuana and something that she referred to as "XO," which she explained may have been "a form of Ecstasy" that was sometimes "laced with meth."

After the hearing, the trial court orally pronounced its ruling:

Mr. Washington, having heard your plea of true to the allegations and the State's petitions to adjudicate, I hereby formally adjudicate your guilt in these cases.

And, based on the evidence presented, based on the underlying events, and the testimony of your girlfriend that she knew you were dealing fentanyl and cocaine, I hereby sentence you to 12 years in [prison].

The trial court's written judgments comport with its oral ruling, and Washington appeals from those judgments.

## II.  DISCUSSION

In his sole issue on appeal, Washington argues that the trial court abused its discretion when it adjudicated him guilty because its ruling was based on a mishearing of the evidence.  He grounds this argument on the trial court's oral statement that its ruling was based in part on "the testimony of [his] girlfriend that she knew [he was] dealing fentanyl and cocaine."  In Washington's view, this statement shows that the trial court adjudicated him guilty "based on what [it] thought was a subsequent act of manufacturing and dealing which was neither pled nor . . . part of the evidence in this case."  Washington's interpretation of the trial court's statement is strained and, regardless, his pleas of true to the State's allegations were enough to support the adjudication of his guilt.

We apply an abuse of discretion standard to a trial court's judgment adjudicating guilt and revoking deferred-adjudication community supervision.  *Johnson*

4

*v. State*, 386 S.W.3d 347, 350 (Tex. App.—Amarillo 2012, no pet.); *see* Tex. Code Crim. Proc. Ann. art. 42A.108(b) (providing that determinations to adjudicate guilt are reviewable in the same manner as those in non-deferred-adjudication community-supervision cases); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (stating that we apply abuse of discretion standard to orders revoking community supervision); *see also Jones v. State*, No. 02-09-147-CR; 2010 WL 851420, at *2 (Tex. App.—Fort Worth March 11, 2010, pet. ref'd) (mem. op., not designated for publication). The State must prove by a preponderance of the evidence that a condition of community supervision was violated. *Rickels*, 202 S.W.3d at 763. A plea of true to even one of the State's allegations is sufficient to support a judgment adjudicating a defendant guilty and revoking his deferred-adjudication community supervision. *See Watts v. State*, 645 S.W.2d 461, 463 (Tex. Crim. App. 1983); *Jones*, 2010 WL 851420, at *2.

Here, Washington pleaded true to all of the allegations in the State's petition. That alone is enough to support the trial court's judgments adjudicating him guilty. *See Jones*, 2010 WL 851420, at *2. Washington claims, though, that the trial court's statement about his girlfriend's testimony proves that it based its determination of his guilt on a misunderstanding of her testimony. The hearing transcript, however, contradicts this argument. Concerning the adjudication of Washington's guilt, the trial court stated only that its determination was based on his "plea of true to the allegations and the State's petitions to adjudicate." It then stated that the girlfriend's

5

testimony was considered in making the *sentencing* determination. In other words, the girlfriend's testimony and any alleged misunderstanding thereof on the part of the trial court was irrelevant to Washington's adjudication of guilt.

For these reasons, we overrule Washington's sole issue.[3]

## III. CONCLUSION

Having overruled Washington's single issue, we affirm the trial court's judgments.

/s/ Brian Walker

Brian Walker
Justice

Delivered: May 16, 2024

---

[3]In his appellant's brief, Washington also alludes to the trial court's twelve-year sentences as being "harsh." To the extent that Washington attempts to challenge his sentences, we overrule that argument as unpreserved because he raised it for the first time on appeal. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (holding that complaint of cruel and unusual punishment under Texas constitution was waived because defendant presented his argument for the first time on appeal); *Noland v. State*, 264 S.W.3d 144, 151–52 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd) (holding that when appellant failed to object to his sentence at the punishment hearing or to complain about it in his motion for new trial, he failed to preserve his Eighth Amendment complaint that the punishment assessed was "grossly disproportionate and oppressive"); *see also Mercado v. State*, 718 S.W.2d 291, 296 (Tex. Crim. App. 1986) (stating that, as a general rule, appellant may not assert error pertaining to his sentence when he failed to object or otherwise raise such error in the trial court).