

**NUMBER 13-12-00402-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**GUADALUPE CORTEZ,**                               **Appellant,**

**v.**

**THE STATE OF TEXAS,**                             **Appellee.**

**On appeal from the 148th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez, and Longoria
Memorandum Opinion by Justice Longoria**

By two issues, Guadalupe Cortez appeals his conviction and ten year prison sentence for the first degree felony offense of possession with intent to deliver four grams or more but less than two hundred grams of cocaine.  *See* TEX. HEALTH & SAFETY CODE

ANN. § 481.102(3)(d) (West 2010) ("Penalty Group 1 [includes] . . . [c]ocaine . . . ."); *id.* § 481.112(d) (West 2010) ("An offense under Subsection (a) [manufacture or delivery of, or possession with intent to deliver, a substance in Penalty Group 1] is a felony of the first degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams."); TEX. PENAL CODE ANN. § 12.32(a) (West 2011) ("An individual adjudged guilty of a felony of the first degree shall be punished by imprisonment in the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than 5 years."). For the reasons set forth below, we affirm the trial court's judgment.

## I. SUFFICIENCY OF THE EVIDENCE

In his first issue, Cortez contends that the evidence is insufficient to support the jury's finding of guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979) ("[E]ssential of the due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof-defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.").

### A. Standard of Review

When we review the sufficiency of the evidence to support a verdict under the sufficiency standard set out in *Jackson v. Virginia*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 307). "This standard accounts for the fact[-]finder's duty to resolve conflicts in the

2

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quotations omitted). "[W]e determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* (quotations omitted). "Our review of all of the evidence includes evidence that was properly and improperly admitted." *Id.* "When the record supports conflicting inferences, we presume that the fact[-]finder resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Id.* "Direct and circumstantial evidence are treated equally." *Id.* "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.*

**B. Applicable Law**

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quotations omitted).

In relevant part, the Texas Penal Code provides as follows: "Except as authorized by this chapter, a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1." *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). "In a possession with intent to deliver case, the 'intent to deliver' element may be proved by circumstantial evidence,

3

such as the quantity of drugs possessed, the manner of packaging, and the presence of the accused in a drug house." *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).

## C. Relevant Facts

On August 30, 2011, a Corpus Christi Police Department SWAT team, assisted by the Texas Department of Public Safety ("DPS") and the United States Bureau of Alcohol Tobacco, and Firearms, executed a narcotics search warrant at 111 Sam Rankin Street. After announcing, "police, search warrant," and using a "flash bang" device, the law enforcement agents entered the house through a side door and discovered Cortez with two other people. DPS Lieutenant Vincent Luciano testified that Cortez was "pulled off" a couch in the "front" room of the house:

> There was - - he appeared to be sitting - - or he had been pulled off of where he was sitting on the couch. There was a stand, and on the stand there was cocaine, crack cocaine, and then there was a pistol on the edge of the couch or underneath his legs when the officer pulled him off the couch. . . . From where he was sitting the pistol was probably like right underneath where he had been, and the crack cocaine was within arm's reach. Just like if you had a couch and you're sitting on the edge of the couch, where you could reach over on like a TV-stand-type thing. It was sitting right there.

Lieutenant Luciano testified that the cocaine was in "plain view" and was "readily observable if you walked into that room." Lieutenant Luciano described seeing "bagged cocaine, what appeared to be crack cocaine, sitting on that stand within that arm's reach of where the defendant had been sitting." According to Lieutenant Luciano, "It was pretty much set up just like what you think of as a crack house, people sleeping on the floor. That's the only way you could really describe it. . . . [There was a] [m]inimum amount of furniture. It was just not a place you would want to live." Lieutenant Luciano reiterated,

4

"It's what I would call a crack house," by which he meant that it was "[b]asically being used to sell narcotics or drugs . . . ."

The State presented additional evidence showing that there was a digital scale in the house and that Cortez had a bag of marijuana in his pocket when the police detained him. Cortez told the police, "it's just marijuana, everybody does that." When asked why he was at the house where firearms and cocaine had been found, Cortez replied that he did not have a place to live and knew it was a place where he could stay.

Sharla McCloskey, a DPS forensic scientist, analyzed the drug evidence that was recovered during the search and submitted to her laboratory. McCloskey testified that the baggies found in the front room or living room in plain view of where Cortez was sitting contained cocaine in the amount of 2.89 grams, 32.65 grams, 5.07 grams, 0.48 grams, and 0.63 grams, respectively. A bag of what turned out to be "cutting" agent was found in the kitchen.

Finally, the State offered the testimony of co-defendant Stanford Barlow Jr. who testified that on the day the police executed the search warrant at 111 Sam Rankin Street, he and Cortez had been selling cocaine and that the third occupant of the house, Brenda De La Rosa, was there to purchase cocaine. Barlow testified that he was acting as the "doorman," opening the door for customers and closing it behind them, and Cortez was exchanging the drugs for money. Barlow testified that they were making between $500 and $600 per day from selling drugs. According to Barlow, Cortez had been staying in the house for about one month prior to the raid. Although Barlow said that the drugs were not in plain view but rather were in a mixed nut can on the stand in the living room, he acknowledged that when the police entered the house, they went "straight to the drugs."

5

In exchange for his cooperation and testimony against Cortez, Barlow received a five year prison term instead of the six year term the State had been seeking.

**D. Discussion**

Cortez argues that the evidence was insufficient because, on this record, "it was feasible that . . . [he] was homeless, was just stopping by in this house at 111 Sam Rankin, and was not involved in drug dealing or gun possession, except for the self-serving testimony of Mr. Barlow." Cortez argues that the State failed to negate the possibility that he "was homeless and at the wrong place at the wrong time"; however, "[t]he prosecution has no affirmative duty to rule out every hypothesis except that of guilt." *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011) (quotations omitted). "To prove the unlawful-possession-of-a-controlled-substance element of the charged offense in this case, the State was required to prove that: 1) appellant exercised control, management, or care over the . . . cocaine; and 2) appellant knew that this was cocaine." *Id*. at 594. Moreover, since Cortez was not in exclusive possession of the house, the State was also required to prove beyond a reasonable doubt that Cortez's connection to the cocaine "was more than just fortuitous." *Id.* This is the "affirmative links" rule that the Texas Court of Criminal Appeals discussed in *Poindexter*:

> The "affirmative links rule" is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. This rule simply restates the common-sense notion that a person- such as a father, son, spouse, roommate, or friend-may jointly possess property like a house but not necessarily jointly possess the contraband found in that house. Thus, we have formulated the rule that when the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.

6

*Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (quotations, citations omitted).

Lieutenant Luciano testified that the police essentially caught Cortez red-handed in a room by himself with a large amount of cocaine packaged in various amounts sitting in plain view within his reach along with a pistol. A total of 44.86 grams of cocaine was recovered by the police and introduced into evidence. The circumstances described by Lieutenant Luciano constituted "independent evidence" that tended to connect Cortez to the crime and sufficiently corroborated Barlow's accomplice witness testimony. *See Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007) ("Texas law requires that, before a conviction may rest upon an accomplice witness's testimony, that testimony must be corroborated by independent evidence tending to connect the accused with the crime.") (citing TEX. CODE CRIM. PROC. ANN. art. 38.14). Therefore, Barlow's testimony may be considered in our review of the sufficiency of the evidence. *See id.*

Barlow testified that he and Cortez had been selling the cocaine for roughly one month prior to the police raid. According to Barlow, Cortez handled the cocaine and exchanged it for cash from their customers. The other evidence the police collected from the house, including the digital scale and "cutting" agent, were shown to be tools used in illegal drug trafficking operations. These "independent facts and circumstances" affirmatively link Cortez to the cocaine such that a jury could reasonably find beyond a reasonable doubt that Cortez's connection to the cocaine was more than just fortuitous. *Id.*

Based on the foregoing, a rational juror could find that Cortez had exercised control, management, and care over the cocaine and that Cortez knew it was cocaine.

7

This evidence was sufficient to support the jury's finding of guilt beyond a reasonable doubt. *See Lopez v. State*, 108 S.W.3d 293, 300 (Tex. Crim. App. 2003) ("[I]f an actor possesses a quantity of drugs sufficient to permit the jury to conclude that he possessed them with the intent to distribute them, the statute does not require any existing offer to sell or prospective buyer before he may be held liable under Section 481.112."). Accordingly, Cortez's first issue is overruled.

## II. SENTENCE

In his second issue, Cortez contends for the first time on appeal that the trial court violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution by imposing a sentence that was disproportionate to the seriousness of the alleged offense. *See* U.S. CONST. amends. VIII, XIV. Cortez's failure to specifically object to an alleged disproportionate or cruel and unusual sentence in the trial court or in a post-trial motion waived any error for the purposes of appellate review. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) ("Since, appellant is raising this argument for the first time on appeal, any error is waived."); *Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("[I]n order to preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired."). Accordingly, Cortez's second issue is overruled.

8

### III. CONCLUSION

The trial court's judgment is affirmed.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
27th day of March, 2014.