PD-1156-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/8/2015 4:54:42 PM
Accepted 12/10/2015 5:47:06 PM
ABEL ACOSTA
CLERK

NO. _____

TO THE COURT OF CRIMINAL APPEALS OF TEXAS

**Steven Lowell Morton, Appellant**
**v.**
**The State of Texas, Appellee**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FROM THE COURT OF APPEALS

TENTH APPELLATE DISTRICT OF TEXAS

WACO, TEXAS

NO. 10-14-00113-CR

JOHNSON COUNTY
TRIAL COURT NO. F47525

FILED IN
COURT OF CRIMINAL APPEALS

December 10, 2015

ABEL ACOSTA, CLERK

Brian K. Walker
STATE BAR # 24043978
222 W. Exchange Avenue
Fort Worth, TX 76164
(817) 625-2233 PHONE
(817) 887-5981 FACSIMILE
brian@walkerattorneys.com
Attorney for Appellant

**ORAL ARGUMENT REQUESTED**

1

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . 2

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . 3

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . 3

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . 4

STATEMENT OF THE CASE . . . . . . . . . . . . . . 5

STATEMENT OF PROCEDURAL HISTORY OF THE CASE . . . 6

QUESTIONS PRESENTED FOR REVIEW. . . . . . . . . . 6

ARGUMENT (INAPPROPRIATE DISTANCING) . . . . . . . 6

PRAYER . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF SERVICE . . . . . . . . . . . . . 11

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . 11

# INDEX OF AUTHORITIES

## CASES

*Goodwin v. Balkcom, (11th Cir. 1982)* 684 F.2d 794,
103 S.Ct. 1798, 76 L.Ed.2d 364  . . . . . . . . 8, 9

*Hernandez v. State,* 988 S.W.2d 770,
770 (Tex. Crim. App. 1999)  . . . . . . . . . . 7

*People v. Wade,* 44 Cal.3d 975, 750 P.2d 794,
(1983) 460 U.S. 1098, 103 S.Ct 1798 . . . . . . 9

*Rylander v. State,*
101 S.W.3d 107, 110 (Tex. Crim. App. 2003) . . . 8

*Strickland v. Washington,*
466 U.S. 668 ,104 S.Ct. 2052,
80 L.Ed.2d 674 (1984) . . . . . . . . . . . . 7, 8

*Thompson v. State,*
9 S.W.3d 808, 813 (Tex. Crim. App. 1999) . . . . 8

*Young v. State,*
991 S.W.2d 835, 837-38
(Tex. Crim. App. 1999) . . . . . . . . . . . . 8

# STATEMENT REQUESTING ORAL ARGUMENT

Oral argument is requested.

## IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties, as well as the names and addresses of all counsel.

| | |
|---|---|
| Appellant: | Steven Lowell Morton |
| Trial Counsel | William 'Bill' Mason<br>Attorney at Law<br>PO Box 767<br>Cleburne, TX 76031 |
| Appellate<br>Attorney for Appellant | Brian K. Walker<br>Attorney at Law<br>222 W. Exchange Ave.<br>Fort Worth, Texas 76164 |
| Appellee | The State of Texas |
| Trial Attorneys | Ryan Hill & Trey Brown<br>Johnson County District<br>Attorney's Office<br>204 S. Buffalo St.<br>Cleburne, Texas 76033 |
| Appellate Attorney for<br>Appellee | David Vernon<br>Johnson County<br>Assistant District<br>204 S. Buffalo St.<br>Cleburne, Texas 76033 |
| Trial Judge | Honorable John Neill<br>18th District Court<br>Johnson County, Texas |

All references to Texas statutes, rules, etc. are references to the latest edition published by West Publishing Company, unless otherwise indicated.

STEVEN LOWELL MORTON,

Appellant-Applying for Review

V.

THE STATE OF TEXAS,

Appellee

************

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

************

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

## STATEMENT OF THE CASE

On April 7, 2014 an array was sworn and voir dire commensed on factors pertaining to guilt and innocence, and factors pertaining to punishment. (*R.R.* Vol. 6, p. 4). On April 9, 2014, the jury found Appellant guilty of possession of a controlled substance in an amount of 4 grams or more but less than 200 grams. (*R.R.* Vol. 8, p. 47). Later that day, after a trial on punishment, the jury sentenced Appellant to sixty years in the

5

Institutional Division of the Texas Department of Criminal Justice.  (*R.R.* Vol. 8, p. 147).

## STATEMENT OF PROCEDURAL HISTORY OF THE CASE

The Court of Appeals rendered its decision and delivered its written opinion on August 6, 2015. The deadline for filing a Petition for Discretionary Review is September 5, 2015.

## QUESTIONS PRESENTED FOR REVIEW

Is it appropriate for the trial counsel to tell the jury that he or she is court-appointed, or does that amount to an inappropriate distancing of himself, or herself, from the client?

## ARGUMENT

At the beginning of his voir dire, Defense Counsel introduced himself to the jury and explained to them that he was "appointed by the Court to represent Steven Morton."  (*R.R.* Vol. 6, p. 133).  Doing so was an inappropriate attempt to distance himself from his client, which amounted to ineffective assistance of counsel.

In reviewing an ineffective assistance of counsel claim, the court is to evaluate the effectiveness of counsel under the two-pronged test enunciated in *Strickland v. Washington.* *Strickland v. Washington,* 466 U.S. 668 ,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 988 S.W.2d 770,770 (Tex. Crim. App. 1999).  First the defendant must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064.  To prove this deficient representation, the defendant must demonstrate that his counsel's performance deviated from prevailing professional norms. *Id.* Secondly, the defendant must show prejudice.  A showing of prejudice requires the defendant to show that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*  The failure to satisfy either prong of the *Strickland*

test negates a court's need to consider the other. *Id.* at 697, 104 S.Ct at 2069.

Appellant must prove by a preponderance of the evidence that counsel was ineffective. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). An appellate court cannot speculate beyond the record provided;  rather, a reviewing court must presume that counsel's actions were taken as part of a strategic plan for representing the client. *Young v. State,* 991 S.W.2d 835, 837-38 (Tex. Crim. App. 1999).  The appellant must overcome the presumption that his trial counsel's strategy was sound, and affirmatively demonstrate the alleged ineffective assistance of counsel from the record. *Rylander v. State,* 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

By introducing himself to the jury as the attorney "appointed by the Court to represent Steven Morton," Defense Counsel was inappropriately distancing himself from Appellant.  (*R.R.* Vol. 6, p. 133).  Appellate Counsel has researched both

8

Federal and State cases.  Appellate Counsel has been unable to find any Texas cases on point.  However, The 11th Circuit Court of Appeals addressed this issue in 1983 and reversed a defendant's murder conviction.  Trial counsel had informed the jury of his appointed status.  The Court stated, "…we deplore the sentiments expressed by Goodwin's trial counsel…"  The Court also stated, "…reminding a jury that the undertaking is not by choice, but in service to the public, effectively stacks the odds against the accused."  *Goodwin v. Balkcom, (11th Cir. 1982)* 684 F.2d 794, 806, cert. den. (1983) 1002 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 364.  The Supreme Court of California cited *Goodwin v. Balkcom* for the same proposition.  *People v. Wade,* 44 Cal.3d 975, 750 P.2d 794, 244 Cal.Rptr. 905, Cert. Denied, (1983) 460 U.S. 1098, 103 S.Ct 1798.

There is no conceivable trial strategy for a defense counsel to tell the jury that he or she is court appointed.  The only reason for doing so is

to insulate oneself from his or her client, and to let the jury know that trial counsel did not choose to represent the criminal defendant. This obious attempt to distance himself from Appellant most definitely put Appellant in a bad light. Nothing positive could come from this distancing. Appellant believes that it is time that this honorable court consider this important issue. Accordingly, we humbly request review for this court to determine if it is appropriate for court appointed counsel to announce to the jury that he or she is court appointed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, STEVEN LOWELL MORTON, Appellant, prays that this Petition for Discretionary Review be granted; that this case be submitted to the Court; that the Court of Appeals' decision be reversed and for such other relief for which he shows himself entitled.

Respectfully Submitted,

10

/s/ Brian K. Walker
By: BRIAN K. WALKER
222 W. Exchange Ave.
Fort Worth, Texas 76164
(817) 625-2233 Phone
(817) 887-5981 Fax
Attorney for Appellant
brian@walkerattorneys.com

**CERTIFICATE OF SERVICE**

A copy of this petition was served by first class mail to the District Attorney, Johnson County by electronic delivery and to the State Prosecuting Attorney at P.O. Box 12405, Austin, Texas 78711 on the 2nd day of September, 2015.

/s/ Brian K. Walker
BRIAN K. WALKER

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the length requirements as set forth by the Texas Rules of Appellate Procedure in that this document contains 1551 words, and that the document is in 14 point type.

/s/ Brian K. Walker
BRIAN K. WALKER

11



# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00113-CR

**STEVEN LOWELL MORTON,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 18th District Court
Johnson County, Texas
Trial Court No. F47525**

## MEMORANDUM  OPINION

In three issues, appellant, Steven Lowell Morton, challenges his conviction for unlawful possession of a controlled substance in an amount greater than four grams but less than 200 grams.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West 2010). Specifically, Morton contends that:  (1) the trial court erred by not providing an article 38.23 instruction in the jury charge, *see* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005); (2) his sentence is disproportionate to his criminal acts; and (3) trial counsel provided

ineffective assistance by telling the jury that he was court appointed. Because we overrule all of Morton's issues on appeal, we affirm.

## I.  BACKGROUND

At 10:35 a.m. on May 15, 2013, Jesus Benhumea, a custodian at the Western Inn in Cleburne, Texas, knocked on the door of room 107 to see if he could clean the room. After receiving no response from the room's occupants, Benhumea informed the motel manager, who instructed Benhumea to wait until 11:00 a.m. to clean the room. Per the motel's policy, the occupants of room 107 had also been called at 10:30 a.m. Once again, motel staff did not receive a response.

About five or ten minutes prior to 11:00 a.m., Benhumea knocked on the door to room 107. Again, he received no response and reported this to the motel manager. At 11:00 a.m., Benhumea and the motel manager entered room 107 using a passkey. Upon entering, they saw Morton laying on the bed with what appeared to be a gun under his right leg. Concerned, the motel manager recommended that Dayabhai "Barry" Patel, the owner of the motel, report the situation to the Cleburne Police Department.

Upon arriving, police officers spoke with Barry and proceeded to room 107 to verify the report. Officer Corey Hall of the Cleburne Police Department testified that he entered the room after 11:00 a.m., and when he did, he saw Morton,

> lying on the left side of the bed with his head on the pillow and feet towards
> the end. . . . I also saw a handgun under his right leg. . . . And a sword in
> the bed next to him which was—he was laying right there, and the sword

was right in here.  And then there was also a rifle laying on the bed right there.

Officers tried to wake up Morton.  When Morton finally awoke, Officer Hall, thinking there was something medically wrong with Morton, called for CareFlite and the Cleburne Fire Department to come assess the situation.  Officer Hall recalled that Morton "appeared to be more than just groggy" and was possibly intoxicated.  While waiting for medical assistance to arrive, Officer Hall observed a black, rectangular bag that was open and unzipped on the table next to the bed.  Within plain view, Officer Hall saw "[a]n orange syringe, several small plastic baggies, and also a short, clear straw with what appeared to be drug residue inside of it."  Based on his training and experience, Officer Hall believed that the bag contained drug paraphernalia and therefore reached inside the bag.  Inside, Officer Hall found a digital scale and more small plastic baggies.

After Morton was cleared of any obvious medical issues, Officer Hall placed Morton under arrest for possession of drug paraphernalia.  Thereafter, Officer Hall searched Morton's person as a search incident to arrest and found a small plastic baggie containing what appeared to be methamphetamine inside of Morton's pants pocket.  Lab tests confirmed that the plastic baggie contained 4.41 grams of methamphetamine.

Morton was subsequently charged by indictment with unlawful possession of a controlled substance in an amount greater than four grams but less than 200 grams.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d).  Included in the indictment were references to Morton's prior felony convictions for delivery of a controlled substance and

escape.  At the conclusion of the evidence, the jury found Morton guilty of the charged offense, concluded that the enhancement paragraphs contained in the indictment were "true," and sentenced Morton to imprisonment for a term of sixty years in the Institutional Division of the Texas Department of Criminal Justice.  Later, Morton filed a motion for new trial, which was overruled by operation of law.  *See* TEX. R. APP. P. 21.8(a), (c).  This appeal followed.

## II.      THE JURY CHARGE

In his first issue, Morton contends that the trial court erred by not giving an instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.23.

**A.      Applicable Law**

A claim of jury-charge error is reviewed using the procedure set out in *Almanza*. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  The first step is to determine whether there is error in the charge.  *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).  "Then, if we find error, we analyze that error for harm."  *Id.* (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)).

Article 38.23 of the Code of Criminal Procedure provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a). In *Madden*, the Court of Criminal Appeals stated that a defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007). Specifically, the *Madden* court mentioned the following:

> There are three requirements that a defendant must meet before he is entitled to the submission of a jury instruction under Article 38.23(a):
>
> (1) The evidence heard by the jury must raise an issue of fact;
>
> (2) The evidence on that fact must be affirmatively contested; and
>
> (3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.
>
> There must be a genuine dispute about a material fact. If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct.

*Id.* at 510-11.

**B.    Discussion**

On appeal, Morton argues that the record contains a fact issue as to whether or not he was found in room 107 before checkout time. More specifically, Morton asserts that the record contains more than a scintilla of evidence that the door may have been opened when Benhumea first visited the room, which thereby created a fact issue necessitating an article 38.23 instruction. However, based on our review of the record, this argument is not supported by the testimony adduced at trial.

During direct examination, Benhumea testified that he first went to room 107 at 10:35 a.m. on the day in question and that no one responded to his knock at the door. Benhumea subsequently notified the motel manager, who instructed Benhumea to wait until 11:00—normal checkout time at the motel—to clean the room. Benhumea testified that he returned to room 107 about five or ten minutes prior to 11:00 a.m. and, once again, did not receive a response to his knock. Benhumea notified the motel manager. "At 11 when the time is up," Benhumea and the motel manager opened the door to room 107 with a passkey.

On cross-examination, Benhumea denied opening the door when he first approached room 107 at 10:35 a.m. Instead, Benhumea noted that he first knocked on the door at 10:35 a.m. or 10:37 a.m. "and then the next time when I opened it was at 11 or 11:05 when the manager came over." Benhumea's testimony on cross-examination was consistent with his testimony on direct examination, and nothing in his testimony raised

a fact issue as to whether or not the door to room 107 was opened prior to checkout time at 11:00 a.m.

Furthermore, Dayabhai "Barry" Patel, the owner of the motel, corroborated Benhumea's testimony. Barry testified that the check-out time at the motel is "11 o'clock in the morning. It's posted in the office." Barry further clarified that:

> Around 10:30 we call them in their room, find out if they are in the room or not whether they answer their phone. It they do answer the phone, we let them know it will be checkout time. Once we hear what their intentions are—they say, yes, they are leaving. If by 11 o'clock they have not left, we knock on the door and just remind them it is checkout time.
>
> . . . .
>
> When they don't pick up the phone or they don't answer the door, then we use a passkey to get in. Sometimes they have vacated the room and left the key on the table. So if that's the case, the housekeeper will go in and strip the beds, do the laundry and stuff like that.

Because Morton did not answer the phone or respond to knocks on the door, Barry recalled that, on the morning in question, the motel manager and Benhumea entered room 107 at 11:00 a.m. Upon further questioning, Barry reiterated that the door to room 107 was opened after 11:00 a.m. on the day in question. Later, Barry testified that the motel manager told him that she and Benhumea saw Morton sleeping on the bed in room 107 with a gun. Because the motel manager and Benhumea were unable to wake Morton, and because Morton had weapons in the room, Barry called the Cleburne Police Department for assistance.

Based on the foregoing, we cannot say that the record demonstrates a disputed fact issue raised by affirmative evidence as to whether the motel staff unlawfully entered room 107 prior to 11:00 a.m. *See Madden*, 242 S.W.3d at 509-11; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.23(a). Consequently, we cannot conclude that the charge was erroneous or that the trial court erred in failing to include an article 38.23 instruction in the charge. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *Barrios*, 283 S.W.3d at 350; *Ngo,* 175 S.W.3d at 743; *Almanza*, 686 S.W.2d at 171; *see also Madden*, 242 S.W.3d at 509-11. We overrule Morton's first issue.

## III. PROPORTIONALITY OF MORTON'S SENTENCE

In his second issue, Morton contends that the imposed sentence of sixty years' imprisonment was excessive and grossly disproportionate to the offense. Morton did not object to the sentence in the trial court.[1]

An appellant must make an objection in the trial court for us to review this issue for error on appeal. *See* TEX. R. APP. P. 33.1(a); *see also Makin v. State*, No. 10-14-00044-CR, 2014 Tex. App. LEXIS 11944, at **1-2 (Tex. App.—Waco Oct. 30, 2014, no pet.) (mem. op., not designated for publication). Claims of cruel and unusual punishment can be waived if they are not raised in the trial court. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim.

---

[1] When the trial court announced the jury's verdict and asked Morton if there is "any reason why sentence should not be pronounced upon you today," Morton responded, "No, sir." And though the record reflects that he filed a motion for new trial, Morton did not complain about the sentence in his motion. Instead, Morton argued that "the verdict in this case is contrary to the law and the evidence."

App. 1996) (concluding that failure to raise a challenge to a sentence under the Eighth Amendment to the United States Constitution in the trial court leads to waiver on appeal); *see also Noland v. State*, 264 S.W.3d 144, 151-52 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (concluding that appellant waived his claim of cruel and unusual punishment by failing to object in the trial court).

Because Morton did not raise any objection to the punishment in the trial court at the time of sentencing or in a motion for new trial, we conclude that he has waived this complaint.[2] *See* TEX. R. APP. P. 33.1(a); *Rhoades*, 934 S.W.2d at 120; *Noland*, 264 S.W.3d at 151-52; *see also Makin*, 2014 Tex. App. LEXIS 11944, at \*2. We overrule Morton's second issue.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

---

[2] And even if he had preserved this complaint for review, Morton has not met the threshold determination that his sentence is grossly disproportionate to the crime. Specifically, Morton was convicted of unlawful possession of a controlled substance in an amount greater than four grams but less than 200 grams, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West 2010). Furthermore, in addition to finding Morton guilty of the charged offense, the jury found two felony enhancement paragraphs contained in the indictment to be "true." Therefore, the applicable punishment range was twenty-five to ninety-nine years or life imprisonment. *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014). Additionally, the State presented evidence of Morton's lengthy criminal history that spanned twenty years and involved eight felony convictions and numerous extraneous offenses, including convictions for delivery of a controlled substance, burglary of a building, escape, credit card abuse, unauthorized use of a vehicle, theft of more than $1,500 but less than $20,000, forgery, and forgery by possession of a check with intent to pass. Moreover, at no point has Morton shown how his sentence, which was clearly in the punishment range, is grossly disproportionate to sentences for similar crimes in the same jurisdiction or sentences imposed for the commission of the same crime in other jurisdictions. *See Ajisebutu v. State*, 236 S.W.3d 309, 314 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("Generally, a sentence within the statutory range of punishment for an offense will not be held cruel or unusual under the Constitution of either Texas or the United States."); *see also Solem v. Helm*, 464 U.S. 277, 292, 103 S. Ct. 3001, 3011, 77 L. Ed. 2d 637 (1983) (stating that the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions).

In his third issue, Morton complains that he received ineffective assistance of counsel because his trial counsel informed the venirepersons during voir dire that he was "appointed by the Court to represent Steven Morton."

## A.    Applicable Law

To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must show that counsel was so deficient as to deprive appellant of his Sixth Amendment right to counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Second, appellant must show that the deficient representation was prejudicial and resulted in an unfair trial. *Id.* To satisfy the first prong, appellant must show that his counsel's representation was objectively unreasonable. *Id.*; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). To satisfy the second prong, appellant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson*, 9 S.W.3d at 812. A reasonable probability exists if it is enough to undermine the adversarial process and thus the outcome of the trial. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001). The appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Thompson*, 9 S.W.3d at 813. Our review is highly deferential and

presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.3d at 813.

The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). "Isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination." *Ex parte Welborn*, 875 S.W.2d 391, 393 (Tex. Crim. App. 1990). Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and an allegation of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813.

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Specifically, when the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Therefore, absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged

conduct must be 'so outrageous that no competent attorney would have engaged in it.'"

*Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).  Though the record is silent as to the reasons for most of trial counsel's conduct, we will examine the record to determine if trial counsel's conduct was "'so outrageous that no competent attorney would have engaged in it.'"  *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

**B.      Discussion**

At the beginning of his voir dire, Morton's trial counsel made the following introduction:

> Ladies and gentlemen, my name is William Mason or Bill Mason.  I am a lawyer here in Cleburne, and I have been appointed by the Court to represent Steven Morton.  He is sitting behind me here.  He's accused of possession of a controlled substance.  You have kind of figured all of that out at this point, I guess.  One thing I want to say—and I do appreciate this because sometimes jury panels kind of get a personality sometimes where no one says anything.  And Mr. Hill is right.  Really, believe it or not, it's the people that don't talk for some reason, it's been my experience, that end up serving on juries.  So if you hold a particular opinion, you know, I want you—I expect you to tell us your thoughts and your feelings.  It's okay to disagree with what the law says.  It's okay to hold your own opinion about something.  Give us your ideas.  Stand by your opinion.  Don't let anybody talk you out of it.  None of that is out of line.  This is the time to do it really.

On appeal, Morton complains about trial counsel's reference that he was appointed in this case.[3]

---

[3] In support of his third issue, Morton does not rely on any Texas authority.  Instead, he relies heavily on a case from the Eleventh Circuit.  *See Goodwin v. Balkcom*, 684 F.2d 794 (11th Cir. 1982).  First, we note that *Goodwin* is not binding on this Court.  Furthermore, we find the case to be factually

At the outset, we note that the record is silent as to trial counsel's strategy. *See Rylander*, 101 S.W.3d at 111; *Bone*, 77 S.W.3d at 833. Therefore, we must analyze trial counsel's conduct to determine if it was "'so outrageous that no competent attorney would have engaged in it.'" *Roberts*, 220 S.W.3d at 533 (quoting *Goodspeed*, 187 S.W.3d at 392).

In *Doby v. State*, the Court of Criminal Appeals addressed defense counsel's apparent attempt to garner sympathy for the defendant by mentioning to the jury that he was appointed, rather than retained, counsel. *See generally* 455 S.W.2d 278 (Tex. Crim. App. 1970). The trial court had instructed defense counsel and the defendant not to

distinguishable. In fact, in *Goodwin*, trial counsel's mentioning of his appointed status was accompanied by numerous other mishaps. *Id.* at 806. Indeed, the *Goodwin* Court mentioned the following:

> The state interprets the references to appointed status as nothing more than a legitimate trial tactic aimed at soliciting sympathy from the jury. This interpretation is difficult to accept in light of the reason given by trial counsel. Goodwin, on the other hand, submits that this type of attitude explains why counsel failed to challenge the composition of the grand and petit juries, neglected to object to *Witherspoon* violations, and failed to object to the use of leading questions by the prosecution. We tend to agree with Goodwin, but our reasoning goes further. Admitted concerns over community ostracism do more than inhibit a lawyer's actions at trial where his performance is visible by fellow citizens. An attitude such as this impairs the vitality of investigation, preparation, and representation that all clients deserve, indigent or otherwise. Fears of negative public reaction to the thought of representing an unpopular defendant surely hamper every facet of counsel's functions. Moreover, reminding a jury that the undertaking is not by choice, but in service to the public, effectively stacks the odds against the accused.

*Id.*

In the instant case, Morton's trial counsel merely mentioned that he was appointed to represent Morton as a means of introducing himself to the jury. There is no indication in the record that Morton's trial counsel had an antagonistic or bad attitude toward Morton to the extent that Morton's Sixth Amendment right of counsel was impaired. And contrary to the facts in *Goodwin*, we find it telling that Morton only complains about this isolated comment, rather than any other action taken by trial counsel. Therefore, based on the foregoing, we are not persuaded to apply *Goodwin* to the facts in this case.

mention that defense counsel was appointed. *Id.* at 281. Defense counsel objected, arguing that the jury should know that the defendant is a pauper. *Id.* In holding that the trial court did not err in its instruction, the *Doby* Court noted that the "fact that an accused has appointed (or retained) counsel should make no difference in the trial of a criminal case and should not be given any weight by a jury." *Id.*

Unlike *Doby*, defense counsel in this case was able to present the complained-of information to potentially garner sympathy for Morton—an arguably plausible defense strategy. *See id.* And it is possible that such information could have influenced the jury to avoid sentencing Morton at the top of the punishment range. Nevertheless, after examining the totality of trial counsel's representation of Morton, we cannot say that Morton satisfied the first prong of *Strickland*, especially considering the lack of a record explaining trial counsel's strategy and the highly deferential standard that applies to counsel's actions. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mallett*, 65 S.W.3d at 62-63; *Thompson*, 9 S.W.3d at 812; *see also Rylander*, 101 S.W.3d at 111; *Bone*, 77 S.W.3d at 833.

And even assuming, arguendo, that Morton satisfied the first prong of *Strickland*, we do not believe that the outcome of the hearing likely would have been different. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mallett*, 65 S.W.3d at 62-63; *Thompson*, 9 S.W.3d at 812. This is especially true considering that: (1) the record contains ample evidence demonstrating Morton's guilt of the charged offense; and (2) the State presented

evidence of Morton's extensive criminal history, which included eight felony convictions and numerous extraneous offenses. Thus, because we look to the totality of the representation, we cannot say that Morton has satisfied his burden of proving by a preponderance of the evidence that his trial counsel was ineffective. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Thompson,* 9 S.W.3d at 813; *see also Gamble,* 916 S.W.2d at 92. We overrule Morton's third issue.

## V. CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed August 6, 2015
Do not publish
[CRPM]





# TENTH COURT OF APPEALS

**Chief Justice**
*Tom Gray*

**Justice**
*Rex D. Davis*
*Al Scoggins*

McLennan County Courthouse
501 Washington Avenue, Rm 415
Waco, Texas 76701-1373
Phone: (254) 757-5200          Fax: (254) 757-2822

**Clerk**
*Sharri Roessler*

August 6, 2015

        In accordance with the enclosed Memorandum Opinion, below is the judgment in the numbered cause set out herein to be entered in the Minutes of this Court as of the 6th day of August, 2015.

10-14-00113-CR        STEVEN LOWELL MORTON v. THE STATE OF TEXAS - ON APPEAL FROM THE 18TH DISTRICT COURT OF JOHNSON COUNTY - TRIAL COURT NO. F47525 – AFFIRMED - Memorandum Opinion by Justice Scoggins:

        "This cause came on to be heard on the transcript of the record of the Court below, and the same being considered, because it is the opinion of this Court that there was no error in the judgment, it is ordered, adjudged and decreed by the Court that the judgment be in all things affirmed, and that the appellant pay all costs in this behalf expended and that this decision be certified below for observance."